**MERCANTILE FINANCIAL CORP.**

v.

**Gordon S. MILLER**
and
**Jules Gomez.**

**Civ. A. No. 39086.**

United States District Court
E. D. Pennsylvania.

Nov. 7, 1968.

Robert A. Hauslohner, Philadelphia, Pa., for plaintiff.

Robert H. Malis, Philadelphia, Pa., for defendant.

## OPINION

MASTERSON, District Judge.

On October 22, 1965, the plaintiff, Mercantile Financial Corporation, hereafter referred to as Mercantile, filed an "Order for Entry of Appearance, Entry of Judgment and Assessment of Damages" in this Court. Federal jurisdiction was based upon the diversity of citizenship of the parties. In its Order for Entry of Judgment, Mercantile averred that the defendants were in default under a Guaranty Agreement by which they guaranteed prompt payment to the plaintiff of all debts owed to it by G. F. & M. Sales and Service, Inc. (hereafter referred to as G. F. & M.). G. F. & M. allegedly was indebted to Mercantile in the amount of $164,021.12 and the plaintiff requested the entry of judgment in its favor in the amount of this debt plus $1,000.00 reasonable attorney's fees, for a total of $165,021.12. Judgment in this amount was entered on October 22, 1965.

After the entry of judgment, on December 6, 1965, Mercantile issued a praecipe for writ of execution directing the United States Marshal to levy upon any and all property of the defendant, Gordon Miller (hereafter referred to as Miller), found in the possession of Massachusetts Mutual Life Insurance Company as garnishee. On January 21, 1966, Miller made a motion to set aside the entry of default judgment or, in the alternative, to open the judgment. Shortly thereafter he made a motion to stay all attachment and execution proceedings in the case, and, on February 1, 1966, Judge Joseph S. Lord, III, of this Court, granted this motion.[1] On May 11, 1966, Judge Harold Wood of this Court, granted a motion to intervene made by the Central-Penn National Bank pursuant to Rule 24 (a) (3) of the Federal Rules of Civil Procedure. Central-Penn alleged that

1. A writ of execution was levied upon the defendant's property on April 5, 1966, with a direction to the United States Marshal to attach Miller's property not otherwise levied upon which was in the possession of the garnishee.

monies held by the garnishee and claimed by Mercantile were due it pursuant to certain agreements made between Central-Penn and Miller.

On June 17, 1966, Miller's original motion to set aside, or in the alternative, open the judgment, was scheduled for argument. The motion was denied for lack of prosecution when Miller's original attorney failed to appear. Some time after this Miller was apprised of the failure of his counsel to prosecute this motion and he retained present counsel for this purpose. On September 22, 1967, his new counsel filed a second motion to set aside, or in the alternative, to open the default judgment. The plaintiff filed its answer to Miller's motion on September 28, 1967, but because of various commitments of counsel, hearing on the motion was delayed until April, 1968. Two hearings were conducted in April and counsel provided the Court with their respective memoranda of law in June, 1968. For reasons discussed below, the motion to open the judgment will be granted.

In support of his motion Miller argues that the plaintiff, in computing the amount of debt allegedly owed to it, improperly failed to give him credit for the fair market value of inventory taken in execution upon the judgment. According to Miller this property had a fair market value of $750,000.00 and was sold by the plaintiff for approximately $19,000.00. Miller urges that the method of sale violated the provisions of the commercial code establishing procedures for the sale of collateral by the secured party.[2] Miller also contends that no credit was given him for unspecified payments made on account of the obligation of the corporate-debtor G. F. & M.

Mercantile has opposed Miller's motion on the merits by contending that the sale was conducted in a "commercially reasonable manner". Mercantile also has interposed various preliminary considerations which it claims bar the defendant's motion. Among these is its contention that Miller is barred by res judicata. This claim relates to a suit instituted on July 27, 1965 by G. F. & M. against Mercantile in the Court of Common Pleas of Montgomery County, Pennsylvania. In that action G. F. & M. asked the state court to enjoin the sale, which Miller challenges in this action, which was to be held on the afternoon of July 27, 1965. The state court did preliminarily enjoin this sale and scheduled a hearing on G. F. & M.'s motion to continue the injunction for July 30, 1965. Prior to that second hearing Mercantile successfully removed the action to this Court, and, on July 29, 1965, Judge John Morgan Davis of this Court, approved a stipulation between counsel which provided as follows:

"And now this 29th day of July 1965 it is STIPULATED AND AGREED by and between STANFORD S.

---

2. The relevant statute is The Act of 1959, October 2, P.L. 1023, § 9, 12A P.S. § 9–504 which reads, in pertinent part:
(1) A secured party after default may sell, lease, or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. * * *
(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable * * * or is of a type customarily sold on a recognized market * * * reasonable notification of the time and place of any public sale * * *. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale. * * * *"

HUNN, ESQ. and I. LEONARD KOVITZ, ESQ. Attorneys for defendant and CHARLES T. BONOS, JR. ESQ. Attorney for plaintiff as follows:

1. Defendant's Petition for removal be sustained

2. Preliminary injunction issued by the Court of Common Pleas of Montgomery County be dissolved with prejudice

3. Plaintiff agrees to pay and Defendant agrees to accept the sum of $1500.00, receipt whereof is hereby acknowledged, in full satisfaction of all Defendants' Claims or Rights, for costs and fees re Complaint Action and Plaintiff's Bond under surety bond of Fidelity and Deposit Company of Maryland filed in this matter."

Mercantile contends that this stipulation bars consideration of the issues sought to be raised now by Miller.

■ In support of this res judicata contention Mercantile has cited Francis I. Dupont & Co. v. Sheen, 324 F.2d 3, 5 (C.A.3, 1963), Morse Boulger Destructor Co. v. Camden Fibre Mills, 239 F.2d 382, 383 (C.A.3, 1956), and Moore Federal Practice, Volume 1B, Section 0.409, p. 1032. Both of the cases relied upon by Mercantile support the general proposition that a stipulation between counsel to a final disposition of a controversy on its merits will not be disturbed unless the party seeking to disturb it shows that " * * * the stipulation itself was inadvertently, inadvisedly or improvidently entered into and would operate unjustly and to the prejudice (of the movant) * * *." See, Morse, supra, 239 F.2d at 383. In both of these cases, however, it was clear that the stipulation in question was intended to be a final disposition of the rights of the parties. On the other hand, in the instant case, it is clear that the purpose of the stipulation was only to permit the plaintiff to proceed with the sale. There is nothing in the stipulation from which it can be inferred that the defendant intended to abandon his rights to have the

collateral disposed of in a "commercially reasonable manner".

■ Under these circumstances it would be inequitable to deny Miller the opportunity to establish that the sale of these garnished assets was not in compliance with the relevant provisions of Pennsylvania law. Similarly, his motion should not be denied because of Mercantile's related arguments of waiver and/or laches. Although it is true that Miller's previous motion to open was dismissed for lack of prosecution this was apparently due to the inadvertence of Miller's prior counsel. Since Mercantile has not shown that revival of the motion would prejudice its defense, it would be inequitable to bar Miller's request for relief on the basis of this threshold consideration.

The basis of Miller's motion to open the default judgment entered against him is his contention that the sale of assets by Mercantile on July 29, 1965, in Lansdale, Pennsylvania, was not in conformity with 12A P.S. § 9–504(3), cited above, particularly with the provision that:

" * * * every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable".

In support of this contention he argues that only one party was present at the sale, that this party was acting in concert with Mercantile, that Mercantile did not generally advertise the sale or prepare brochures describing the goods to be sold, and, finally, that the price received for the assets was substantially less than their fair market value.

In making his motion to open the default judgment entered against him Miller has relied upon a provision of the Uniform Commercial Code adopted by the Commonwealth of Pennsylvania, i. e. 12A P.S. § 9–507(1). This statute establishes a debtor's right to challenge the propriety of any disposition of collateral seized by one of his creditors, and § 9–507(2) amplifies the definition of "commercially reasonable manner" which

is the standard applied to such dispositions:

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner * * *", § 9–507(2)

Although § 9–507(2) clearly provides that a discrepancy between a price received by a creditor disposing of assets pursuant to § 9–504 and an isolated price later shown to have been obtainable, is not alone sufficient to grant a debtor affirmative relief under § 9–507(1), certainly such a discrepancy, if substantial, is relevant to a determination of whether a challenged sale was "commercially reasonable". See, Alliance Dis. Corp. v. Shaw, 195 Pa.Super. 601, 604, 171 A.2d 548 (1961), Family Finance Corp. v. Scott, 114 P.L.J. 119, 24 D. & C.2d 587 (1961), and Atlas Construction Co. v. Dravo-Doyle Co., 114 P.L.J. 34 (1966). The evidence here established that the price received for the goods sold by the plaintiff was substantially less than both the price originally paid for them by G. F. & M. and the price which the purchaser of the assets subsequently received for them on resale, i. e. approximately $57,000.00. This evidence strongly suggested that the plaintiff did not obtain the fair market value for these goods at the time of the sale, and the plaintiff did not rebut this inference.

The evidence also indicated that Mercantile neither sold these assets "in the usual manner in any recognized market therefor" nor that it "sold in conformity with reasonable commercial practices among dealers in the type of property sold * * *", § 9–507(2). It conducted this auction with only a minimal amount of publicity, in the early evening at one of the three sites at which the secured assets were located. Mercantile's failure to locate likely purchasers of these assets and its eagerness to conduct a sale at which it knew only one bid would be made, and that bid by a bidder from Chicago who had no knowledge of the local market for these assets, strongly supports Miller's contention that this sale was not in conformity with § 9–504. The conduct of this auction differed markedly from the conduct of a general auction of such materials described as "commercially reasonable" by the defendant's expert witness.

Taking all the above-mentioned factors into consideration, along with the evidence suggesting a significant discrepancy between the value of the assets sold and the price received, it is clear that this sale was not "commercially reasonable" and that Miller therefore is entitled to have the default judgment entered against him opened. Evidence presented at the hearing has established, however, that Miller is entitled to have the judgment opened for the purpose of examining *only* the value of the assets sold by Mercantile on July 29, 1965. Moreover, in order to have the judgment altered in his favor, Miller still must establish by a preponderance of the evidence what the fair market value of these assets was on the date of the sale. By granting Miller's motion we do not suggest that he in fact is entitled to any greater credit arising from the disposition of this collateral than he has already received.

For all the reasons discussed above the defendant Gordon S. Miller's motion to open the judgment is granted.

### ORDER

And now, this 7th day of November, 1968, it is hereby ordered that the motion to open the judgment entered on October

22, 1965, in the above-captioned case, made by the defendant, Gordon S. Miller, is granted for the limited purpose of allowing the defendant to prove the amount of any credit on such judgment to which he may be entitled by reason of the plaintiff's sale of the secured assets.