U. S. A. on Behalf of its Agency, the SMALL BUSINESS ADMINISTRATION

v.

CHATLIN'S DEPARTMENT STORE, INC., et al.

Civ. A. No. 79–2196.

United States District Court, E. D. Pennsylvania.

July 21, 1980.

Peter F. Vaira, U. S. Atty., Richard J. Stout, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Allen B. Dubroff, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

GILES, District Judge.

The United States, on behalf of its agency the Small Business Administration ("SBA"), brings this action for mortgage foreclosure to collect on a deficiency judgment obtained under a guaranty agreement executed by the individual defendants, Lewis and Irene Chertok, as security for a loan. The SBA has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P.

On June 29, 1976, Chatlin's Department Store, Inc. ("Chatlin's") executed a $330,000 promissory note in favor of Girard Bank. The SBA guaranteed 90 percent of the loan balance in the event of default by the borrower. Defendants executed a guaranty agreement to secure the note.

When Chatlin's defaulted, the SBA, after honoring its guaranty commitment to Girard Bank, was assigned the promissory note, defendant's guaranty agreement, and a mortgage document previously executed by defendants. The SBA then conducted a public auction sale of Chatlin's assets which allegedly brought a return of $11,000. The SBA now seeks to recover the remaining amount due upon the loan, alleged to be approximately $300,000.

Defendants maintain that the SBA violated a duty imposed by the Pennsylvania Uniform Commercial Code ("UCC"), 12A P.S. § 9–504(3) to dispose of Chatlin's assets in a commercially reasonable manner and that the UCC governs the rights and obligations of the SBA in this action. Section 9–504(3) reads, in pertinent part, as follows:

> (3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. . . .

In moving for summary judgment, the SBA asserts that its rights and liabilities are governed by an unconditional guaranty agreement which must be construed in accordance with federal law, as contrasted to state commercial law. Further, the SBA claims that even if the defense of commercial reasonableness were available to them, defendants waived their right to assert it upon execution of unconditional guaranty agreement. Finally, it contends that the

sale of Chatlin's assets was commercially reasonable in any event.

For the reasons set forth below, this court holds that the duty imposed by Section 9–504(3) of the UCC does govern the sale of assets and therefore, the guaranty agreement did not release the SBA from its obligation to conduct the sale of Chatlin's assets in a commercially reasonable manner. Inasmuch as there remains a significant factual dispute as to the commercial reasonableness of the sale of the assets of the primary obligor, the motion for summary judgment must be denied.

## I.

The SBA contends that defendants have an absolute duty to repay the debt because of the default of Chatlin's. Defendants argue that state commercial law provides an affirmative defense. While the court agrees with the SBA that specific language in the promissory note [1] provides that federal law is controlling in this case, the question remains as to what substantive federal rule applies. *See, United States v. Willis*, 593 F.2d 247 (6th Cir. 1979), *United States v. Conrad Pub. Co.*, 589 F.2d 949 (8th Cir. 1978).

In *Willis*, a corporation executed a promissory note in favor of a bank which was guaranteed up to 90 percent by the SBA. The defendants signed a separate instrument unconditionally guaranteeing prompt payment of the note. When the corporation defaulted on the note, the SBA paid back 90 percent of the loan and took possession of the corporate assets. After conducting a public auction sale of the assets, the SBA sought to recover from the individual guarantors the full amount of the loan. The defendant asserted that the sale of the corporate assets was not commercially reasonable, citing Section 9–504(3) of the Ohio Uniform Commercial Code. As in the instant case, the government there also claimed that the defense was unavailable

under federal law since the guarantors had signed an unconditional guaranty agreement. In holding for the guarantors, the court stated that there was no substantive federal law in accordance with which the rights of the parties could be determined. Therefore, the court adopted the state commercial law as the federal rule of decision. Citing the Supreme Court in *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943) where the Court held "in the absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule according to their own standards", the *Willis* court stated:

> This case presents a situation where the need for uniformity is clear, this need is met by adoption of the relevant provisions of the Uniform Commercial Code as the federal rule of decision. The Uniform Commercial Code has been enacted and is operative in 49 states (Louisiana excepted) and the District of Columbia. Moreover, it is the culmination of years of exhaustive study and effort, the purpose of which was to simplify, clarify, modernize and make uniform the laws of various jurisdictions concerning commercial practices and transactions.

*Willis*, 593 F.2d at 253 (footnotes omitted).

In *Conrad*, defendants had also executed an unconditional guaranty agreement which was subsequently assigned to the SBA. For the same reasons as in *Willis*, the Eighth Circuit Court of Appeals adopted Section 9–504(3) of the North Dakota UCC to allow the defense of commercial reasonableness stating, "[t]he UCC has become the source of federal common law in the area of commercial transactions, and, as such, it would be inappropriate to fashion a specialized body of law applicable only to sales of collateral conducted by the SBA." *Conrad*, 589 F.2d at 953 (citations omitted).

When confronted with an SBA unconditional guaranty agreement, the Fifth Cir-

---

1. "This promissory note is given to secure a loan which SBA is making or in which it is participating and, pursuant to Part 101 of the Rules and Regulations of SBA (13 C.F.R. 101.-

1(d)), this instrument is to be construed and (when SBA is the holder or a party in interest) enforced in accordance with applicable Federal law." (Plaintiff's Exhibit "B").

cuit Court of Appeals in *United States v. Terrey*,[2] 554 F.2d 685, page 693, n. 8 (5th Cir. 1977), concluded that if federal law were controlling in the case, the application of the state UCC provision would pose "little threat to the federal program."

The strong policy considerations in favor of adoption of Section 9–504(3) of the UCC as the federal law of decision in such cases were forcefully articulated by the Sixth Circuit Court of Appeals in *Willis*:

> Involved here is a uniform provision which imposes upon a creditor a duty of good faith in disposing of collateral entrusted to it. Its apparent purpose is to protect debtors from unnecessary loss upon sales of the collateral by their creditors following foreclosure. Adoption of state law as the federal rule of decision in these circumstances does not appear to unduly burden the Government; all it need do is exercise good faith in the disposition of collateral entrusted to it. This much we would hope it would do even without the rule and appears to be no more than a fair requirement in any case.

> Thus, unless we are inclined to the view that the Government, simply because it is the Government, is entitled to collect from its debtors regardless of its own capriciousness in disposing of collateral entrusted to it to secure indebtedness, there would appear to be no good reason for departing from state law in this case . . . after all . . . the Government does business on business terms.

*Willis*, 593 F.2d at 253, 254 (footnotes omitted).

■ This court is persuaded by the reasoning of the several Circuit Courts of Appeals which have considered this question and adopts the Pennsylvania Uniform Commercial Code Section 9–504(3) as the federal rule of decision in the instant case. Accordingly, when a creditor decides to liquidate the assets of the primary obligor, it must act as the obligor's fiduciary and make a sincere effort to obtain the full market value for the property. *Terrey*, 554 F.2d at 693.

■ The SBA maintains that the individual defendants, by the act of executing the guaranty agreement, waived any right to raise the defense of commercial reasonableness, citing *United States v. O'Brien*, No. 77–C–559 (E.D.Wis. 2/2/79) in support of the proposition.

The district court in *O'Brien* held that by signing the unconditional guaranty agreement, the defendants waived absolutely all their rights to preservation of collateral. The court, however, did not treat the policy considerations discussed above, and did not acknowledge the circuit court decisions in *Willis, Conrad* and *Terrey*. Those decisions did not construe the guaranty agreement as an absolute waiver of any and all defenses. Rather, each stressed that the commercial understanding of the term "unconditional guaranty" is that it is a limited term. That is, in the trade, the term denotes only that no duty is imposed on the creditor to attempt to collect from the primary obligor prior to attempting to collect from the individual guarantor. This situation is distinguished from a conditional guaranty where the creditor is first required to exhaust the assets of the primary obligor before looking to the assets of the guarantor. *Willis*, quoting *Pavlantos v. Garoufalis*, 89 F.2d 203 (10th Cir. 1937). Therefore, the issue here, by reason of the unconditional guaranty language in the agreement, is not whether the SBA must pursue the primary obligor before turning to the individual guarantors. Rather, the issue is to what extent the SBA can collect from the individual guarantors after being charged with a commercially unreasonable disposition of assets where the assets might have been sufficient to extinguish or significantly reduce the indebtedness.

The SBA contends that as unconditional guarantors, defendants assumed an abso-

2. In *Terrey*, state law was controlling pursuant to a separate agreement entered into contem-poraneously with the guaranty agreement.

lute contractual duty which can only be discharged by full payment, but as stated in *Willis*, 593 F.2d at 255 (footnotes omitted),

> [A]s a matter of federal law, even the broad language [of the unconditional guaranty agreement] will not be deemed to relieve the SBA of any and all responsibility to debtors in disposing of collateral securing its loans. This court cannot and will not sanction the kind of economic waste and financial hardship the government's interpretation of this language has the potential of bringing about . . . the discretion conferred [by the agreement] was never intended to be boundless. . . .

Upon adopting Section 9–504(3) of the UCC as the federal rule of decision, federal courts have permitted unconditional guarantors to invoke the defense of commercial unreasonableness. *Willis; Terrey; Mercantile Financial Corp. v. Miller*, 292 F.Supp. 797 (E.D.Pa.1968). In *Mercantile*, where a guaranty agreement in favor of the SBA was executed, the court held that a defense of commercial reasonableness of the SBA's disposition of the assets was not barred despite plaintiff's argument of waiver. Therefore, this court holds that the unconditional guaranty agreement does not estop defendants from asserting the defense accorded by Section 9–504(3).

## II.

■ Finally, the SBA contends that the sale of Chatlin's assets was commercially reasonable in fact.

It is well settled that the trial court cannot grant summary judgment unless there is no genuine issue of material fact in dispute. *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980).

In the instant case, there is dispute between the parties regarding the value of the assets at the time of sale. Defendants allege that the assets had a value in excess of $300,000. On the other hand, the SBA alleges the value of the assets was no more than $15,000 and that the sale generated in excess of $11,000.

Defendants' affidavits raise material issues of fact, e. g., whether the SBA inventoried and made an appraisal of the assets. Defendants further claim that the SBA improperly formed an opinion, based upon a mere visual inspection of the premises that any return on the assets would be minimal. The setting of an evaluation figure without an independent appraisal has been held to be sufficient to state a claim of commercial unreasonableness. *California Airmotive Corp. v. Jones*, 415 F.2d 554 (6th Cir. 1969). Furthermore, disparity between prices received at auction and the estimated value of the assets may be yet another relevant factor in the ultimate issue of commercial reasonableness. *Conrad*, 589 F.2d at 954; *Terrey*, 554 F.2d at 693; *Mercantile*, 292 F.Supp. at 801.

There are other facts in dispute, namely, whether the assets were safeguarded after seizure and prior to sale, and whether defendants received adequate notice of the sale.

■ Once the issue of commercial reasonableness is raised, the creditor must rebut the presumption that the value of the collateral equalled the indebtedness secured. *Willis*, 593 F.2d at 260, *Conrad*, 589 F.2d at 955.

Genuine issues of material fact exist regarding the disposition of the assets which must be resolved at trial. Accordingly, plaintiff's motion for summary judgment must be denied.

An order follows.