## Continental Bank v. Meyer

*Alan C. Gershenson*, for plaintiff.
*Paul R. Rosen* and *Allan D. Windt*, for defendant.

HILL, *J.*, April 27, 1982—

## I. STATEMENT OF FACTS

In 1975, defendants, Herbert Meyer, president & sole shareholder of Oxford Jewelry Corporation (Oxford), and his wife Joan Meyer, executed an unlimited surety agreement securing loans made to Oxford by Continental Bank. Subsequently, Oxford experienced financial difficulty and in consideration of Continental's continued support through January 31, 1981, the Meyers signed a letter agreement dated September 30, 1980 which reaffirmed their obligations under the surety agreement and further stated that they would "not raise as a defense, claim, objection or demand, any action taken or not taken by the Bank with respect to Oxford from the date hereof."[1]

On or about January 16, 1981, Oxford defaulted on its loans and on January 20, 1981, Continental formally declared the default and took possession of Oxford's assets pursuant to existing security agreements. On March 4, 1981, Continental confessed judgment against the Meyers as guarantors of the Oxford debt, for a principal amount of $1,200,000. Continental hired Quaker City Auctioneers who advertised and conducted a public auction on November 17-18, 1981 for the sale of Oxford's inventory. Herbert Meyer received notice of and actually

---

1. See Exhibit A attached to plaintiff's answer to defendants' petition to open.

attended this public sale which produced a net revenue of $323,514.46.

Continental has made vigorous efforts to satisfy the judgment from every available source, and in February, 1982, it began mortgage foreclosure proceedings against two properties owned by defendants, one of which is a residential property in Margate, New Jersey. Faced with the possible loss of their property, defendants engaged counsel to strike or open the confessed judgment against them.

The foregoing are the only facts upon which the parties in this case seem to agree.

### A. Issues Of Fact Raised By Defendants' Petition To Open

While defendants assert numerous arguments in support of their petition to open the confessed judgment, there are two major claims upon which their motion rests. First, defendants aver that between January 20, 1981, the date of default, and March 4, 1981, the date the judgment was entered, accounts receivable were collected by Continental for which defendants never received credit.[2] Plaintiff avers that many of the accounts receivable were uncollectible delinquent accounts and that credit has been given for any collections actually made by the Bank.[3] Defendants argue that had they received proper credit for the amount of collections between January 20 and March 4, 1981, the principal amount of the confessed judgment would have been substantially reduced.

Plaintiff has admitted in a letter to this court dated March 3, 1982, that due to a "miscommunication," the principal amount owed to Continental

---

2. Defendants' petition to open at 3-4.

3. Plaintiff's answer to defendants' petition to open at 6-7.

on March 4, 1981 was actually $1,152,323.65, not the $1,200,000 amount for which judgment was confessed. Plaintiff's counsel has indicated that there would be no objection to the court modifying the judgment to reflect the correct amount.[4] Defendants maintain that even plaintiff's adjusted amount fails to give proper credit for collections made by Continental which should have been applied to further reduce the judgment amount both before and after March 4, 1981.[5]

Secondly, defendants claim that part of their inventory was sold in a commercially unreasonable manner. In addition to the public auction in November 1981, defendants aver that a private sale, to a customer of Continental, occurred of which they received no prior notice, and at which certain inventory was sold for well below its fair market value.[6] Plaintiff denies the averment of a private sale and claims that all inventory was sold at the public auction to the highest bidder.[7]

Furthermore, plaintiff argues that by agreeing to be bound by the terms of the unlimited surety agreement and the letter agreement of September 30,

---

4. Exhibit A attached to defendants' reply to plaintiff's opposition.

5. Defendants' reply to plaintiff's opposition at 4-6.

6. This inventory included (1) diamonds and precious stones; (2) Wedgewood jewelry; and (3) venetian glass. Defendants' reply to plaintiff's opposition at 13-14.

7. Plaintiff's answer to defendants' petition at 9-10. While plaintiff claims to have no knowledge of loose diamonds and precious stones, it still maintains that these items were sold at the auction. Plaintiff's answer at 13-14. It should be noted that an examination of the inventory list prepared by Quaker City Auctioners shows no record of loose gems, Wedgewood, or venetian glass having been offered for sale on November 17-18, 1981. Defendants' Exhibits D-14, D-16, and D-23 attached to the Deposition Testimony dated March 26, 1982.

1980, defendants have waived any right they may have had to raise this defense.[8]

## B. Issues Presented

The following questions of law are before this court:

(1) Can the confessed judgment be opened based on defendants' allegations that Continental has failed to give proper credit for amounts it has received?

(2) Can the confessed judgment be opened based on defendants' allegations that Continental has failed to comply with the requirements of commercial reasonableness under Article 9 of the Pennsylvania Uniform Commercial Code?[9]

(3) What are the general requirements for opening a judgment in Pennsylvania?

(4) Under Pennsylvania law, can a debtor/guarantor waive the rights afforded him under Article 9 of the Pennsylvania Uniform Commercial Code by signing an Unlimited Surety Agreement?

## II. DISCUSSION

### A. Opening The Judgment Based On Allegations Of Failure To Give Proper Credit.

As previously stated, defendants allege and plaintiff denies that proper credit, in reduction of the judgment amount, has not been given for the collection of certain accounts receivable made by Continental. Defendants correctly rely upon Investors Consumer Discount Co. of Pa. v. Caskey, 1 D. & C. 3d 24 (1977), as authority for opening the judgment in this case. In Caskey, plaintiff's answer admitted

---

8. Plaintiff's supplemental brief in opposition at 14-20.

9. 12A P.S. §9 (1973).

that payments made by defendants had not been credited to them, while in the present case, Continental denies defendants' allegations of failure to give proper credit. This factual difference serves as strong support for the need to open the judgment in the present case. In the absence of a factual dispute, the Caskey court found it necessary to open the judgment to "permit defendants the opportunity to prove that they [did] not owe the amount for which judgment [was] taken." Id. at 26.

If, in the present case, defendants' allegations are true, then, under Caskey, they are entitled to a remedy; therefore, the judgment must be opened to put both sides to their proof.

### B. Opening A Judgment Based On Allegations Of Failure To Comply With The Commercial Reasonableness Requirement

Pennsylvania has adopted Article 9 of the Uniform Commercial Code (Code) dealing with secured transactions.[10] Sections 9-501 through 9-507 prescribe the rights and obligations of the secured party upon the default of the debtor. In order to comply with these sections, a secured party must dispose of the debtor's collateral in a commercially reasonable manner. Specifically, three sections of Article 9 offer some guidelines to aid in the determination of whether a particular sale of collateral is commercially reasonable.

Under §9-504(3), disposition of collateral may be by public or private sale provided the method, manner, time, place, and terms of the sale are commercially reasonable. This section also requires that the secured party give the debtor reasonable notification of any sale of collateral. Section 9-507(2)

---

10. 12A P.S. §9 (1973).

provides that the possibility of obtaining a higher price for the collateral at a different time and type of sale is not, by itself, enough to establish commercial unreasonableness. Finally, under §9-507(1), the debtor is entitled to recover any loss caused by the secured party's failure to comply with the commercial reasonableness requirements of the Code.[11]

A major case which attempts to define commercial reasonableness is Old Colony Trust Co. v. Penrose Industries Corp., 280 F. Supp. 698 (E.D. Pa. 1968), aff'd 398 F. 2d 310 (1968).[12] In that case, defendants, after default, attacked as commercially unreasonable a private sale of stock which had been pledged as collateral to secure their loan. In upholding the sale, the court formulated the following guidelines for determining whether a sale is commercially reasonable under §§9-504(3) and 9-507(2):

"It is commercially reasonable if the [secured] party (1) acts in good faith, (2) avoids loss, and (3) makes an effective realization. Furthermore, the party may obtain court approval if he (4) sells in the usual manner in a recognized market, or (5) sells at the current price in a recognized market, or (6) sells in conformity with reasonable commercial practices among dealers in the type of property." Id. at 713.

The private sale in Old Colony was held to be

11. In the present case, any such recovery might take the form of a reduction in the principal amount of the confessed judgment.

12. While the Federal district court used Massachusetts law as the rule of decision for purposes of diversity jurisdiction, the court of appeals in Old Colony indicated that the same result would obtain under the Pennsylvania Commercial Code, 398 F. 2d at 312, n.1.

commercially reasonable in light of the fact that a public auction would have had an adverse effect on the value of the stock. The court reasoned that under the circumstances of the Old Colony case, a private sale brought the maximum sales price obtainable, and , thus, fulfilled the underlying policies of Article 9, Id.

Maximum sales price was also used as the ultimate test of commercial reasonableness in United States v. Willis, 593 F. 2d 247 (6th Cir. 1979), where a secured party proceeded with a public sale yielding only $45,000 at a time when he had outstanding private offers for the collateral of $200,000. In overturning the public sale, the Willis court adopted the six Old Colony guidelines and held that a secured party's discretion in choosing between a public and private sale is "limited by [his] good faith duty to maximize the proceeds upon sale of the collateral." Id. at 259. Thus, in order to test the commercial reasonableness of a disposition of collateral under Article 9, a court must consider all of the circumstances surrounding a particular case, and determine that the sale, whether public or private, produced the maximum price obtainable at the time.

In order to test the reasonableness of Continental's disposition of Oxford's collateral under the guidelines enunciated in Old Colony and Willis it will be necessary to open the judgment. In this way, a determination can be made as to the fair market value of the inventory involved, whether there was, in fact, a private sale of which defendants never received notice, the motivation of Continental in choosing a private sale, and whether the sale brought the maximum sale price obtainable at the time.

When, as in the present case, a sale is challenged

for failure to obtain the fair market value of the collateral, the burden of proof shifts to plaintiff to rebut the inference that the sale was commercially unreasonable: In Re Zsa Zsa Limited, 352 F. Supp. 665, (S.D.N.Y. 1972). Failure to meet this burden may result in the secured party being denied recovery on the judgment: United States v. Willis, 593 F. 2d at 247, 258 (1979) (secured party who disposed of collateral in a commercially unreasonable manner was denied recovery from the guarantor); Dynalectron Corp. v. Jack Richards Aircraft Co., 337 F. Supp. 659 (W.D. Okla. 1972) (holder of security interest in aircraft not entitled to deficiency judgment where plane sold hastily at well below fair market value).

In the instant case, defendants' allegations that Continental disposed of part of the collateral through a private sale at far below market value without notifying defendants, if true, raises the inference that at least part of the sale does not meet the test of commercial reasonableness set forth in Old Colony and Willis. In order for Continental to rebut the inference raised by defendants' petition, the judgment must be opened so that this court may receive evidence from both parties on the issue of commercial reasonableness.[13]

---

13. This court's decision to open the confessed judgment is supported by the case of Mercantile Financial Corp. v. Miller, 292 F. Supp. 797 (E.D. Pa. 1968). In Miller, the court opened a default judgment where the sale of the debtor's assets was done with minimal publicity and the price obtained was below fair market value: Id. at 801. The court explained that the opening of the judgment was for the limited purpose of examining the value of the assets, and further indicated purpose of examining the value of the assets, and further indicated that judgment would be altered in the defendant's favor only upon a showing, by a preponderance of evidence, that the fair market value of the assets on the date of sale exceeded the price actu-

## C. Standards For Opening A Judgment.

Under Pennsylvania law, three conditions must be met for a court to open a judgment: (1) a petition to open must be promptly filed; (2) a reasonable excuse must be given for any failure to respond; and (3) a meritorious defense must be shown: Hutchison v. Hutchison, 274 Pa. Superior Ct. 175, 179, 418 A. 2d 352, 354 (1980). (Citations omitted.) See also Bucks County Bank & Trust Co. v. DeGroot, 226 Pa. Superior Ct. 419, 313 A. 2d 357 (1973); Alliance Discount Corp. v. Shaw, 195 Pa. Superior Ct. 601, 171 A. 2d 548 (1961).

An additional test is set forth in Pennsylvania Rule of Civil Procedure 2959(e) which provides that a court *shall* open a judgment where the evidence produced in the petition would require, in a jury trial, that the issues be submitted to the jury.[14] Where, as in the present case, factual disputes exist concerning the circumstances surrounding a confessed judgment, such disputes are appropriate for submission to a jury, and, thus, satisfy the test for opening a judgment: Investors Consumer Discount Co. of Pa. v. Caskey, supra., 1 D. & C. 3d 27 (1977). See also, Ritchey v. Mars, 227 Pa. Superior Ct. 33, 324 A. 2d 513 (1974).

Finally, the court in Becker v. Schoettle, 277 Pa. Superior Ct. 129, 419 A. 2d 695 (1980), set forth the standard for testing the sufficiency of evidence offered in a petition to open:

---

ally obtained: Id. See also Alliance Discount Corp. v. Shaw, 195 Pa. Superior Ct. 601, 171 A. 2d 548 (1961) (confessed judgment opened where secured party disposed of automobile by private sale without notifying debtor as required by § 9-504(3) of the Pennsylvania Commercial Code).

14. Pa.R.C.P. 2959(e), 1973, as amended.

"[t]he facts *as alleged* must be viewed by the court in the exercise of its discretion in the light most favorable to the moving party and further, the lower court must accept as true all evidence and reasonable and proper inferences flowing therefrom." Id. at 132-33, 419 A. 2d at 697 (Emphasis in the original.)

Applying the Becker standard to the instant case, it is clear that defendants have strong support for opening the judgment. Their allegations, whether true or not, raise inferences of commercial unreasonableness and of the failure to give defendants proper credit as hereinbefore discussed. A full hearing on these issues seems appropriate in view of the large judgment amount and the possibility of protracted litigation in this case.

### D. Waiver Of Article 9 Rights By Suretyship Agreement

As previously mentioned, plaintiffs in this case assert that defendants have waived their right to assert the defenses contained in their petition to open. In the supplemental brief, plaintiff's counsel refers at length to the language of the Unlimited Surety Agreement and the September 30, 1980 letter agreement to support the waiver argument.[15]

An examination of the relevant provisions reveals that the language used in these agreements is unmistakably that of waiver, and by the clear and unambiguous terms contained therein, a strong basis exists upon which to conclude that defendants have waived their right to challenge plaintiff's disposition of the collateral. Indeed, as a matter of

---

15. See plaintiff's supplemental brief in opposition to defendants' petition to open at 15-16.

strict contract construction, no other interpretation would be possible.[16]

The case before this court is not, however, one of mere contract interpretation. While it may be clear that under the plain meaning rule defendants agreed to be bound by the terms of the contract as written, the ultimate issue to be decided in this case is whether the rights afforded by Article 9 of the Pennsylvania Uniform Commercial Code can be waived at all as a matter of law.

Each of the agreements by which, plaintiff argues, defendants have waived their defenses, also contain clauses which bind both parties under the laws of the Commonwealth of Pennsylvania. Therefore, it is the statute governing the case at bar to which this court must first turn in making a determination.

Section 9-501(3) of the Pennsylvania Code prohibits waiver by debtors of the rights afforded by §§ 9-502(2); 9-504(2) and (3); 9-505(1) and (2); 9-506; and 9-507.[17] The code does, however, permit the parties to alter these rights provided the standards used are not manifestly unreasonable.[18]

There are presently no Pennsylvania cases which address the issue of whether the rights afforded by §§ 9-504(3) and 9-507 can be waived by a debtor in a suretyship agreement. Some guidance can be found, however, in Girard Trust Bank v. O'Neill, 219 Pa. Superior Ct. 363, 281 A. 2d 670 (1971). In that case,

---

16. The September 30, 1980 letter agreement reaffirms the unlimited surety agreement, which gives plaintiff wide discretion to deal with the collateral, and further states that defendants "will not raise as a defense, claim, objection or demand, any action taken or not taken by Bank with respect to Oxford from the date hereof." See attached copies of both agreements.

17. 79 C.J.S. Supp. 116 (1981).

18. 12A P.S. § 9-501(3) (1973).

plaintiff, upon defendant's bankruptcy, received defendant company's accounts receivable pursuant to surety agreements executed by the parties. Girard wrote off many of the accounts as uncollectible and sued defendant: Id. at 365, 281 A. 2d at 672. The lower court ruled that according to the terms of the suretyship agreements, defendants had waived their right to challenge Girard's failure to exercise reasonable diligence and care in the collection of the accounts receivable.

On appeal, the Superior Court remanded the case for a new trial to determine whether Girard had, indeed, been negligent in its collection of the accounts: Id. at 367, 281 A. 2d at 673. In so ordering, the court stated:

"[upon receipt of the accounts, Girard] held security for the principal debtor and had the duty to preserve it for the benefit of the sureties. If Girard wasted this security the obligation of the sureties should be reduced to the extent that they were injured." Id.

Thus, the only Pennsylvania case to date that has dealt with the waiver of defenses under suretyship agreements has rejected the position urged by plaintiff in the present case.[19]

Plaintiff, however, argues that the case of National Acceptance Co. of America v. Wechsler, 489 F. Supp. 642 (N.D. Ill. 1980), should be the controlling authority in this court's decision. For various

19. Furthermore, the O'Neill case was decided without benefit of the clarifying provisions of the Pennsylvania Commercial Code which are decidedly anti-waiver (the official text of the Uniform Commercial Code was not in existence until 1972). It is, therefore, submitted that were O'Neill to be decided under current Pennsylvania law, the outcome of the case would remain the same.

reasons to be discussed below, this court finds that plaintiff's reliance on Wechsler is misplaced and does not control the case at bar.

In Wechsler, the Federal district court held that under Illinois law, a guarantor/debtor may waive his rights under §9-504(3) (commercial reasonableness). There are three factors, however, which distinguish Wechsler from the present case.

First, the Wechsler court based its analysis on the fact that, in that case, the guarantor was not the owner of the collateral and necessarily had a lesser interest in the disposition thereof: 489 F. Supp. at 648. In the present case, defendant, Herbert Meyer, is both the primary debtor and guarantor of the collateral, and the Wechsler court admitted that, in such a situation, it would be "unconscionable to permit a secured party . . . to dispose unreasonably of a debtor's property." Id. at 647-68. Thus, the very case upon which plaintiff relies as primary authority has qualified its holding to exclude the situation presented by the case at bar.

The second factor to be considered is the statutory difference between the Illinois and Pennsylvania Uniform Commercial Codes. Illinois, in adopting the code, added a provision to §9-504(3) which expressly permits post-default waiver by the debtor of the right to notice of sale.[20] The Pennsylvania Code has no comparable provision. The analysis in Wechsler, then, must be read in the context of the difference in the underlying policies of the relevant provisions of the Illinois and Pennsylvania Codes. While the Illinois legislature has elected to allow waiver under certain circumstances, Pennsylvania has adopted the Uniform Commercial Code, as

20. Ill. Rev. Stat. ch. 26, §9-504(3) (1973).

written, with its inherent anti-waiver policy. See supra.

The third factor which militates against reliance on the holding in Wechsler is the decision in Commercial Discount Corp. v. King, 515 F. Supp. 988 (1981). In that case, secured parties were granted summary judgment against the guarantors of certain loans to a debtor. The Illinois Federal district court vacated the summary judgment holding that under § § 9-501(3) and 9-504(3), a debtor/guarantor's pre-default waiver of the right to notice of the sale of collateral is void: Id. at 990. In reaching its decision, the King court specifically disagreed with the approach used in Wechsler, thus, severely limiting the precedential value of the Wechsler decision. The foregoing reasons demonstrate that the Wechsler decision is not dispositive of the case at bar.

Some guidance is available from two Federal cases decided by the Sixth and Ninth Circuit Courts of Appeals. In United States v. Willis, supra, the Sixth Circuit was confronted with an unconditional guaranty agreement which conferred broad power upon the secured party to deal with the collateral upon the debtor's default. Plaintiff, in the present case, argues that the contractual language in Willis differs significantly from the provisions contained in the agreements before this court. A comparison of these provisions leads to the conclusion that while the words used may vary slightly, their meaning is virtually identical.[21]

While admitting that the language in the agreement gave the secured party wide discretion, the Willis court indicated that the discretion conferred was never intended to be boundless, and refused to

---

21. Compare United States v. Willis, 593 F. 2d at 255, with plaintiff's supplemental brief in opposition at 20.

accept any interpretation with the "potential for capricious waste." 593 F. 2d at 255-57. The court reasoned that if it were to accept the contention that an unconditional guaranty places an absolute burden upon the surety to repay a loan, a secured party "could simply give the collateral away, or wantonly destroy it, and still proceed to collect not only the deficiency created by its own capriciousness, but the entire indebtedness outstanding, exclusive of any credit of proceeds which might have been realized from the collateral." Id. at 257.

Finally, in rejecting the argument that an unconditional guaranty gives the secured party unfettered discretion to deal with the collateral, the Willis court held that the secured party is always limited by the duty to exercise the powers conferred "in a good faith attempt to maximize the proceeds of sale." Id. at 255.

This court finds that the holding in Willis is the preferred view and should govern the decision in the case at bar. Article 9 of the Pennsylvania Code permits alteration of the rights conferred thereunder only when the standards used are not manifestly unreasonable, supra. As the reasoning in Willis demonstrates, adherence to the interpretation of the contract language urged by plaintiff in this case would, when carried to its logical end, permit the secured party to waste or destroy the collateral with impunity. Such a construction is manifestly unreasonable and does not comport with the Pennsylvania Commercial Code.[22]

The Ninth Circuit's decision in First National Bank v. Johnson, 553 F. 2d 599 (9th Cir. 1977), does not contradict the position taken by this court on the issue of waiver of Article 9 defenses. While

---

22. See 12A P.S. §§9-501; 9-504; and 9-507 (1973).

the Johnson court did conclude that the language of §9-504(3) permits a guarantor's waiver of the right to notice of sale by surety agreement, the court qualified its holding by recognizing such waiver only in the absence of "willful or grossly negligent waste or misconduct." Id. at 602. Where, as in the case at bar, allegations of misconduct are made, this court finds that even the Johnson case would support the position that defendants have not waived their Article 9 right to raise the defenses presented in their petition to open.

## ORDER

And now, April 27, 1982, it is hereby ordered and decreed as follows:

(1) The judgment in the above-captioned matter is hereby opened in order to enable defendants to present a defense. The alternate relief requested in defendants' petition to strike the judgment is hereby denied. See opinion.

(2) The trial of this issue and related issues, as agreed to by the parties through their attorneys, Paul Rosen, Esq., counsel for defendants Herbert Meyer and Joan Meyer, and Alan C. Gershenson, Esq., counsel for plaintiff Continental Bank, will commence on Monday, October 4, 1982, in chambers before the undersigned without a jury.

(3) A pre-trial conference will be heard in chambers before the undersigned at 3:00 p.m. on Monday, September 20, 1982, and pretrial memoranda will be submitted by the parties by the close of business on Monday, September 13, 1982.

(4) All discovery will be completed by Friday, September 10, 1982.

(5) Pursuant to an agreement by the parties through their counsel aforesaid, the trial of this

matter will proceed irrespective of any proceedings to join additional parties.

(6) Every effort will be made by the court to resolve any issues relating to joinder proceedings of added parties prior to pretrial conference, but the trial will proceed regardless of their resolution by that time.

(7) Pursuant to stipulation by the parties, it is agreed that any additional motions or petitions or other proceedings in the within captioned matter will be heard before the undersigned.