UNITED STATES of America, Plaintiff,

v.

CHAMPION SPRAYER COMPANY, a Michigan Corporation, Timo Siimes and Kaarina Siimes, his wife, Peter T. Rossi and Pia Rossi, his wife, jointly and severally, Defendants.

Civ. A. No. 76–71746.

United States District Court,
E. D. Michigan, S. D.

Oct. 30, 1980.

James K. Robinson, U. S. Atty., by Sharon McPhail–West, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Barris, Sott, Denn & Driker by Eugene Driker and Michael S. Leib, Detroit, Mich., for defendants.

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

GILMORE, District Judge.

This is an action brought by plaintiff United States of America to recover a deficiency judgment from defendants Timo Siimes, Kaarina Siimes, Peter Rossi and Pia Rossi.

On May 15, 1973, a promissory note in the amount of $80,000.00 was made by the Champion Sprayer Company (hereafter "Champion") to the Detroit Bank and Trust. The individual defendants admit that they executed unconditional guaranties, the terms by which they agreed to pay the debt in the event of a default by Champion.

The loan was secured by the assets of Champion and also by a mortgage on the building and land where Champion conducted its business.

Champion defaulted on its loan payments in September of 1974. On May 19, 1975, the Small Business Administration (hereafter "SBA") purchased the promissory note pursuant to a participation agreement. The land, building, assets and inventory of Champion were offered for sale by the SBA at a public auction held on June 12, 1975.

A Notice of Public Sale was sent to all guarantors. As a result of the sale, $24,245.65 was realized, of which $17,845.03 was applied to the outstanding indebtedness after costs. No bid was received on the land or building. The real estate was ultimately deeded to the State of Michigan pursuant to a 1977 tax sale.

Plaintiff seeks to recover the deficiency judgment from the four guarantors. The case is now before this Court on plaintiff's motion for summary judgment, pursuant to FRCP 56(c). Defendants assert that material issues of fact exist as to the commercial reasonableness of the sale. For reasons stated below, plaintiff's motion for summary judgment is granted.

Federal law controls this case by virtue of the regulation, 13 CFR 101.1(d)(2), pursuant to which the loan transaction guaranteed by the SBA was entered into. See *U.S. v. Willis,* 593 F.2d 247 (6th Cir. 1979). Where, as in this case, there is a federal interest in the applicability of a uniform rule and where there is no substantive law with which the rights of the parties can be determined, it is appropriate to apply the provisions of the Uniform Commercial Code as the rule of decision to the commercial reasonableness of a sale by the SBA. *Id., supra,* at pp. 252–254. Since Michigan has adopted the model version of the UCC provision here in question, to the extent that this Court employs the UCC as the federal rule of decision in this case, it applies Michigan law.

Michigan's Uniform Commercial Code, MCL 440.9504, describes in pertinent part the manner in which the disposition of collateral must be made:

"Disposition of the collateral may be made by public or private proceedings and may be made by way of 1 or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place, and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable."

In *Willis, supra,* the Sixth Circuit, quoting from *Old Colony Trust Co. v. Penrose Industries Corp.,* 280 F.Supp. 698, 715 (E.D. Pa.1965), applied a provision identical to MCL 440.9504 to an SBA sale and stated that,

"The relevant test is ... whether every aspect of the sale is commercially reasonable. It is commercially reasonable if the party (1) acts in good faith, (2) avoids loss, and (3) makes an effective realization. Furthermore, the party may obtain court approval if he (4) sells in the usual manner in a recognized market, or (5) sells at the current price in a recognized market, or (6) sells in conformity with reasonable commercial practices among dealers in the type of property." *Willis, supra,* at pp. 258–259.

The federal courts have frequently permitted guarantors to invoke the defense of commercial reasonableness and, indeed, the plaintiff in this case does not dispute the availability of that defense to the Rossis and the Siimes. See *U.S. v. Willis, supra ; United States v. Terrey,* 554 F.2d 685 (5th Cir. 1977); *United States v. Whitehouse Plastics,* 501 F.2d 692 (5th Cir. 1974), *cert. den.,* 421 U.S. 912, 95 S.Ct. 1566, 43 L.Ed.2d 7; *Dynalectron Corporation v. Jack Richards Aircraft Co.,* 337 F.Supp. 659 (W.D. Okl.1972).

Whether a disposition is commercially reasonable is a question of fact. *United States v. Terrey, supra.* Once the defense of commercial reasonableness has been asserted, the burden of proof on the issue rests with the secured party. *Willis, supra ; Dynalectron Corporation v. Jack Richards Aircraft Co., supra,* 59 A.L.R.3d 369 (1974).

■ Defendants' assertion to the contrary, this Court finds no genuine issue of fact as to whether the SBA has satisfied the test of commercial reasonableness set forth in *Willis, supra.* Plaintiff has shown that it sold in the usual manner in a recognized market.

The affidavits and documentation submitted by the plaintiff in support of this motion indicate that the sale transpired as follows:

710

An SBA loan officer prepared a recommendation to the SBA that the property be sold at auction. K.A.L. Inc., and another company, L.M.K. Company, both submitted proposals for the sale, and K.A.L.'s proposal was accepted by the SBA. K.A.L. advertised the sale extensively by sending 500 circulars to potential buyers and by the use of newspaper ads, dated June 1 and June 8, 1975, in the Detroit Free Press. The advertising of the sale brought 66 bidders. On the day of auction, a protective bid of $22,-000.00 was entered by the SBA. The assets and inventory were first offered in bulk; one bid of $10,000.00 was received from one of the buyers, such bid being unacceptable since it was not in excess of the protective bid. The sale was then offered in piecemeal, with a gross realization of $24,245.65. Thirty–four of the sixty–six registered bidders were actual purchasers of the machinery and equipment.

Defendants confront the above facts by asserting, through the affidavit of defendant Timo Siimes, that the market price of the collateral was at least $43,835.00 more than the amount obtained at the public sale. Defendants also generally aver that a private negotiated sale or a public sale among those in the sprayer business would have obtained more money.

The price obtained at an auction sale is probative, but not dispositive, of the question of commercial reasonableness. As stated by the Court in *Mercantile Financial Corporation v. Miller*, 292 F.Supp. 797, 801 (E.D.Pa.1968),

> "Although sec. 9–507(2) clearly provides that a discrepancy between a price received by a creditor disposing of assets pursuant to sec. 9–504 and an isolated price later shown to have been obtainable, is not alone sufficient to grant a debtor affirmative relief under sec. 9–507(1), certainly such a discrepancy, if substantial, is relevant to a determination of whether a challenged sale was 'commercially reasonable.'"

In *Willis, supra*, the fact that the SBA proceeded with a public sale of collateral in spite of two firm offers which were five times greater than the proceeds realized upon the sale caused the Sixth Circuit to conclude that the government had failed to carry its burden of proof as to commercial reasonableness. However, the price obtained at the auction in the present case, unlike that in *Willis, supra*, was more than twice the amount of the bid for the collateral in bulk. Defendants' general averments that the price was not the current price in the recognized market thus do not effectively detract from plaintiff's well–documented proof that the sale was "commercially reasonable". As the Court noted in *United States v. Bass*, 618 F.2d 500, 504 (8th Cir. 1980), when rejecting a claim of commercial unreasonableness in an SBA auction, "Guarantors or owners cannot expect that the highest market value or anything close to it will be received on auctioned property in foreclosure sales of this type."

In light of these facts, this Court concludes that the essential facts as to the commercial reasonableness of the sale are undisputed—the government has carried its burden of proof and has demonstrated that the collateral was sold in the usual manner in a recognized market.

■ Defendants also submit that the alleged failure of the SBA to properly preserve, protect and dispose of the land and building defeats plaintiff's claim against the individual guarantors. As noted above, the land and building were offered for sale at the public auction held on June 12, 1975. No bids were received on the real estate. The SBA subsequently decided not to foreclose on the mortgage after receipt of an appraisal which indicated that the forced sale value of the property was $6,500.00, an amount less than taxes owed. Tax liens in the amount of $5,715.00 were also on the real estate at the time of the appraisal. The real property was ultimately disposed of at a tax sale in 1977. In the interim, between the time of the SBA's decision not to pursue its rights against the realty and the tax sale, the building which housed Champion was substantially destroyed by fire. The then–owner of the building, Vincent Santarelli, instituted proceedings in

state court to collect insurance proceeds. A settlement was reached whereby Vincent Santarelli collected $10,500.00. Defendants argue that the SBA's failure to assert its right to those insurance proceeds or to take a deed in lieu of foreclosure precludes summary judgment in favor of the plaintiff. This Court disagrees.

In *Duke v. Reconstruction Furnace Corporation,* 209 F.2d 204 (4th Cir. 1954), *cert. den.,* 347 U.S. 966, 74 S.Ct. 777, 98 L.Ed. 1108, the Fourth Circuit held that the failure of a secured party to diligently enforce its rights against collateral security additional to the guaranty, held to secure the note of the debtor, clearly would not discharge a guarantor's duties pursuant to an unconditional guaranty. The principle of *Duke, supra,* has been cited with approval by the Sixth Circuit in *Willis, supra,* at 255, n. 10. Noting further that the guaranty in this case specifically provided that the "lender shall not be required, prior to such demand on, or payment by, the Undersigned . . . to pursue or exhaust any of its rights or remedies with respect to any part of the collateral," this Court concludes that the fact that the SBA did not pursue its rights against the realty, i. e., take a deed in lieu of foreclosure, does not relieve the individual guarantors of liability.

For reasons stated above, plaintiff's motion for summary judgment is granted.