SHAWMUT WORCESTER COUNTY BANK, N.A. *vs.*
DAVID MILLER & others.[1]

Worcester. April 10, 1986. — August 18, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Uniform Commercial Code,* Secured transactions, Security interest, Sale of
collateral. *Guaranty. Practice, Civil,* Summary judgment. *Waiver. Sta-
tute,* Construction. *Words,* "Guarantor."

On appeal from entry of summary judgment in an action by a bank to
enforce the liability of guarantors on three promissory notes, it was held
that the guarantors were debtors for purposes of G. L. c. 106, § 9-504
(1) and (3), and that, therefore, they were entitled to challenge the
commercial reasonableness of the bank's disposition of the collateral
securing the notes, even though provisions in the guaranties purported
to waive any defenses to the sale of the collateral. [276-280]

In an action by a bank to enforce the liability of guarantors on three prom-
issory notes, allowance of the bank's motion for summary judgment
was error, where the guarantors were entitled to challenge the commercial
reasonableness of the bank's disposition of the collateral securing the
notes, and where, based on affidavits submitted by the bank and the
guarantors, it appeared that there was a contested issue with respect to
the reasonableness of the bank's conduct in disposing of the collateral.
[281-282]

CIVIL ACTION commenced in the Superior Court Department
on March 30, 1984.

The case was heard by *Herbert F. Travers, Jr.,* J., on a
motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Josephine L. Veglia* for the defendants.

*Darragh K. Kasakoff* for the plaintiff.

---

[1] Edwin B. Carton and Judah Graulich.

HENNESSEY, C.J. Shawmut Worcester County Bank, N.A. (bank), the secured party, brought this action to recover a deficiency judgment from the defendants, guarantors of three promissory notes, after the primary debtor defaulted on the notes and after the bank sold the collateral at a private sale. In their answer the defendants raised the defense that the bank handled and disposed of the collateral in a manner that was not commercially reasonable. A judge in the Superior Court entered summary judgment for the bank, see Mass. R. Civ. P. 56, 365 Mass. 824 (1974), apparently on the ground that, by the terms of the guaranty, the defendants effectively waived any defenses relating to the disposition of the collateral.[2] The defendants appealed, arguing that, pursuant to G. L. c. 106, § 9-501 (3) (*b*) (1984 ed.), guarantors cannot waive their rights to challenge the commercial reasonableness of the handling and disposition of collateral by the secured party. We transferred the case here on our own motion and conclude that summary judgment should not have been allowed.

We summarize the facts from the affidavits submitted by each party on the motion for summary judgment. On September 16, 1982, Rim Plastics, Inc. (Rim), a Massachusetts corporation with places of business in Upton and the Jamaica Plain section of Boston, Massachusetts, executed and delivered to the bank, a national banking association, three promissory notes in the original principal amounts of $214,113.58, $48,726.16, and $100,000, respectively. The notes were secured by a security interest in machinery, equipment, accounts receivable, inventory, and other personal property of Rim. Also on September 16, 1982, David Miller, Edwin B. Carton,

---

[2] The judge granted the bank's motion for summary judgment without opinion, but cited as authority for his decision *Federal Deposit Ins. Corp.* v. *Hill*, 13 Mass. App. Ct. 514, 518 (1982). In that case, the Appeals Court held that, by signing a guaranty empowering the bank to "release, surrender or exchange" any of the collateral without notice to the defendant guarantor and without impairing his obligation to pay, the defendant waived "any right he may have had to be discharged under [G. L. c. 106,] § 3-606 by the bank's impairment of collateral." *Id.* We conclude, *infra,* that the *Hill* case is inapplicable here.

and Judah Graulich[3] guaranteed to the bank the payment of all three notes, as well as other obligations of Rim. On August 24, 1983, at which time Rim was in default on its obligations to the bank pursuant to the notes, the bank demanded payment from the three guarantors. The guarantors have not paid any amount to the bank. After the default of Rim, and the defendants' failure to pay the debt, the bank notified the defendants of its intention, as secured party, to take possession of, and to sell at auction, Rim's collateral securing the note. In late November and early December, 1983, in preparation for a sale of the collateral, the bank engaged the services of a professional appraiser who appraised Rim's equipment securing the notes at $57,116. Subsequently, the secured equipment at the Upton facility was moved to Rim's Jamaica Plain location. The sale was advertised in the press and notices were sent to potential bidders in New England, New York, and New Jersey. On January 25, 1984, an auction sale of the equipment was conducted at Jamaica Plain, where $12,407.50 was realized. The collateral not sold at auction was later sold at a private sale for $40,000. Thus, the gross proceeds realized from the sale of the collateral were $52,407.50, or approximately ninety-two per cent of the appraised value of the collateral. The bank then filed suit for a deficiency judgment against the guarantors.

The guarantors, in the virtually identical affidavits submitted in opposition to the bank's motion for summary judgment, attested to certain defects in the manner of handling and disposition of the collateral, which they also raise on appeal. The guarantors assert that the equipment sold by the bank was moved improperly to the auction site, resulting in the loss of some equipment and damage to other equipment. According to the guarantors' affidavits, the equipment was moved from a well-lit modern molding plant in which the equipment was installed properly and in good working order, to an old warehouse. The warehouse, the guarantors assert, was unable to accommodate the equipment and, as a result, the equipment

---

[3] David Miller was treasurer, and Edwin B. Carton was president of Rim. Judah Graulich was a principal stockholder.

was left unassembled and merely placed on the floor in a fashion unrelated to the use of the equipment in the injection molding process. The guarantors assert that some of the equipment was left outside in the rain after it was moved to Jamaica Plain and that a part of the equipment was permitted to roll down an embankment, rendering it useless and destroying the continuity of the equipment ultimately auctioned. Additionally, the guarantors state that certain chemicals were stored improperly, rendering the chemicals worthless. The bank's ill-advised decision to move the equipment, the guarantors assert, caused the bank to incur $27,281.38 in moving costs associated with the sale. The guarantors also challenge the bank's appraisal of the equipment, and state that the bank refused to permit two of the guarantors to assemble the equipment prior to the sale, and refused to permit prospective buyers to examine the equipment prior to the sale, which refusal allegedly had a chilling effect on the sale. Additionally, the guarantors state that the bank unreasonably refused to offer a valuable patent for sale. Further, the guarantors attest that the collateral was sold for an insufficient price and that the bank did not bid at the sale as it had originally indicated it would.

1. *Guarantors' Right to Challenge the Commercial Reasonableness of the Disposition of the Collateral by the Secured Party.*

Pursuant to G. L. c. 106, § 9-504 (1), "[a] secured party after default may sell . . . any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." Also, pursuant to G. L. c. 106, § 9-504 (3) (1984 ed.), "[e]very aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." As provided in G. L. c. 106, § 9-501 (3) (*b*), the above cited provisions of § 9-504 (1) and (3) may not be waived or varied, "[t]o the extent that they give rights to the debtor and impose duties on the secured party." There appears to be no dispute that the defendants entered into agreements with the bank absolutely and unconditionally guaranteeing payments of certain obligations of Rim, including the promissory notes that form the basis of this appeal. Further, the defendants

do not dispute that, through the language of the guaranties, they have agreed to waive defenses to any deficiency action, if the waiver is held to be valid.[4] Rather, the defendants contend that, pursuant to the provisions of G. L. c. 106, § 9-504 (1) and (3) (1984 ed.), they have the right to challenge the commercial reasonableness of the bank's disposition of the collateral and, further, that G. L. c. 106, § 9-501 (3) (*b*) (1984 ed.), renders ineffective any waiver of their privilege to raise this defense.

The bank claims that, as guarantors, the defendants are not debtors within the meaning of these statutory provisions, that the defendants may not assert the defenses available to debtors under § 9-504 (1) and (3), and that, even if the defendants are able to assert these defenses, guarantors, unlike debtors, may waive the defenses prior to the default.

Whether a guarantor may assert the rights to a fair and commercially reasonable disposition of the collateral depends on whether a guarantor falls within the definition of "debtor" in § 9-105 (*d*). Section 9-105 (*d*) defines "debtor" as follows: "the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are

---

[4] At oral argument and in their brief the defendants have not disputed these points.

The guaranties provided in relevant part: "The Guarantor waives: notice of appearance hereof, notice of any action taken or omitted by the Bank in reliance hereon, and any requirement that the Bank be diligent or prompt in making demands hereunder, giving notice of any default by the Borrower (except where notice is required by the terms of the Obligation) or asserting any other right of the Bank hereunder. The Guarantor also irrevocably waives, to the fullest extent permitted by law, all defenses which at any time may be available in respect of the Guarantor's obligations hereunder by virtue of any homestead exemption, statute of limitations, valuation, stay, moratorium law or other similar law now or hereafter in effect." In addition, the guaranties provided: "The Bank shall be at liberty, without giving notice to or obtaining the assent of the Guarantor and without relieving the Guarantor of any liability hereunder, to deal with the Borrower and

not the same person, the term 'debtor' means the owner of the collateral in any provision of the Article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires." A guarantor is certainly a "debtor" within the statutory definition because the guarantor, after default by the principal obligor, "owes payment." See Black's Law Dictionary 634 (rev. 5th ed. 1979) (a guaranty is a promise to answer for the payment of a debt or the performance of an obligation if the person primarily liable in the first instance fails to make payment or perform the obligation). Because § 9-504 establishes the rights and duties of a secured party and the corresponding rights and remedies of a debtor in a default situation, the section deals with the collateral, which in this case the primary debtor owns, and the obligation, which forms the basis for the bank's action for the deficiency judgment. In the default situation, the guarantor becomes liable on the obligation, the amount of which ultimately depends on the price realized from the secured party's disposition of the collateral. The collateral and the obligation are thus so inextricably intertwined that we infer that it was the legislative intent to treat primary debtor and guarantor alike in the context of § 9-504 (1) and (3). Thus we conclude that in this context a guarantor falls within the definition of "debtor."

The majority of jurisdictions construing the language of § 9-105 (*d*), which defines "debtor," have found that guarantors, accommodation makers, and other obligors who owe a collat-

---

with each other party who now is or after the date hereof become liable in any manner for any of the Obligations, in such manner as the Bank in its sole discretion deems fit."

eral duty to pay deficiencies are debtors within the meaning of Article 9.[5] Commentators also have advocated this position.[6]

2. *Waiver of the Commercial Reasonableness Defense.*

From our conclusion that a guarantor is a debtor for purposes of § 9-504 (1) and (3), it follows that the provisions of § 9-501 (3) (*b*), which render the rights of a debtor and the duties of a secured party prescribed by § 9-504 (1) and (3) nonwaivable, apply to guarantors as well. As we have noted, the guarantor

---

[5] See *Ford Motor Credit Co.* v. *Lototsky,* 549 F. Supp. 996, 998 (E.D. Pa. 1982); *Commercial Credit Corp.* v. *Lane,* 466 F. Supp. 1326, 1332 (M.D. Fla. 1979); *Rushton* v. *Shea,* 423 F. Supp. 468, 470 (D. Del. 1976); *First Ala. Bank* v. *Parsons,* 390 So. 2d 640, 642-643 (Ala. Civ. App. 1980); *Norton* v. *National Bank of Commerce,* 240 Ark. 143, 145 (1966); *First Nat'l Bank* v. *Cillessen,* 622 P.2d 598, 600 (Colo. Ct. App. 1980); *Savings Bank* v. *Booze,* 34 Conn. Supp. 632, 634 (Super. Ct. 1977); *Barnett* v. *Barnett Bank,* 345 So. 2d 804, 805 (Fla. Dist. Ct. App. 1977); *Barbree* v. *Allis-Chalmers Corp.,* 250 Ga. 409, 412 (1982); *Commercial Discount Corp.* v. *Bayer,* 57 Ill. App. 3d 295, 300 (1978); *McEntire* v. *Indiana Nat'l Bank,* 471 N.E.2d 1216, 1223 (Ind. App. 1984); *Stockdale, Inc.* v. *Baker,* 364 N.W.2d 240, 242-243 (Iowa 1985); *Camden Nat'l Bank* v. *St. Clair,* 309 A.2d 329, 333 (Me. 1973); *Clune Equip. Leasing Corp.* v. *Spangler,* 615 S.W. 2d 106, 108 (Mo. App. 1981); *First Nat'l Bank & Trust Co.* v. *Hughes,* 214 Neb. 42, 46 (1983); *DeLay First Nat'l Bank & Trust Co.* v. *Jacobson Appliance Co.,* 196 Neb. 398, 403 (1976); *T & W Ice Cream, Inc.* v. *Carriage Barn, Inc.,* 107 N.J. Super. 328, 332-333 (1969); *Chase Manhattan Bank, N.A.* v. *Natarelli,* 93 Misc. 2d 78, 88-89 (N.Y. Sup. Ct. 1977); *Peck* v. *Mack Trucks, Inc.,* 704 S.W.2d 583, 585 (Tex. Ct. App. 1986); *FMA Fin. Corp.* v. *Pro-Printers,* 590 P.2d 803, 807 (Utah 1979); *Adams* v. *B & D Builders & Developers, Inc.,* 144 Vt. 353, 356 (1984); *Rhoten* v. *United Va. Bank,* 221 Va. 222, 227-228 (1980). See also *United States* v. *Willis,* 593 F.2d 247, 256 n.13 (6th Cir. 1979), and cases cited (not specifically deciding the issue but permitting guarantors to invoke the defense of commercial reasonableness); *United States* v. *Champion Sprayer Co.,* 500 F. Supp. 708, 709 (E.D. Mich. 1980); *Mack Fin. Corp.* v. *Scott,* 100 Idaho 889, 894 (1980).

A few courts have taken a contrary position. See *A.J. Armstrong Co.* v. *Janburt Embroidery Corp.,* 97 N.J. Super. 246 (1967) (not followed in *T & W Ice Cream, Inc., supra*); *New Haven Water Co. Employees Credit Union* v. *Burroughs,* 6 Conn. Cir. 709, 711-712 (1973) (not followed in *Booze, supra*).

[6] See Sachs & Belgrad, Liability of the Guarantor of Secured Indebtedness After Default and Repossession Under the Uniform Commercial Code: A Walk on the Wild Side by the Secured Party, 5 U. Balt. L. Rev. 153, 161 (1976); Clark, Suretyship in the Uniform Commercial Code, 46 Tex. L. Rev. 453, 477-478 (1968).

is the real debtor for all practical purposes after default, and we have inferred that the Legislature intended to treat both debtor and guarantor alike as to the defenses here in issue. Ample authority in other jurisdictions supports this result.[7] While there are cases reaching the opposite conclusion,[8] the better course is to apply the provisions of § 9-504 (1) and (3) aimed at protecting the rights of debtors to all guarantors who have the obligations of debtors in the default situation. The two Massachusetts cases where guarantors were held to be bound to their waiver of rights after default are inapposite as they did not occur in contexts, like the situation here, where there is an express legislative provision to preclude waiver of the rights at issue. See *Provident Co-op. Bank* v. *James Talcott, Inc.,* 358 Mass. 180, 191-192 (1970); *Federal Deposit Ins. Corp.* v. *Hill,* 13 Mass. App. Ct. 514, 518 (1982). Thus, to the extent the language of the guaranty agreements signed by the defendants constitutes a waiver of the guarantors' rights to raise any defense to the sale of the collateral, it is ineffective due to the provisions of § 9-501 (3) (*b*).

---

[7] See *United States* v. *Lang,* 621 F. Supp. 1182, 1184 (D. Vt. 1985); *Ford Motor Credit Co.* v. *Lototsky, supra* at 1004; *Commercial Discount Corp.* v. *King,* 515-F. Supp. 988, 992 (N. D. Ill. 1981); *United States ex rel. Small Business Admin.* v. *Chatlin's Dep't Store, Inc.,* 506 F. Supp. 108, 112 (E.D. Pa. 1980); *Commercial Credit Corp.* v. *Lane, supra* at 1332; *Mercantile Fin. Corp.* v. *Miller,* 292 F. Supp. 797, 800 (E.D. Pa. 1968); *First Nat'l Bank* v. *Cillessen, supra* at 601; *Norton* v. *National Bank of Commerce, supra* at 149; *McEntire* v. *Indiana Nat'l Bank, supra* at 1224-1226; *Borg-Warner Acceptance Corp.* v. *Watton,* 215 Neb. 318, 324 (1983); *DeLay First Nat'l Bank & Trust Co.* v. *Jacobson Appliance Co., supra* at 406; *First Bank & Trust Co.* v. *Mitchell,* 123 Misc. 2d 386, 389-390 (N.Y. Sup. Ct. 1984); *Peck* v. *Mack Trucks, Inc., supra* at 586. See also *United States* v. *Willis,* 593 F.2d 247, 256 (6th Cir. 1979).

[8] See *First Nat'l Park Bank* v. *Johnson,* 553 F.2d 599, 601-602 (9th Cir. 1977); *Hyster Credit Corp.* v. *O'Neill,* 582 F. Supp. 414, 416 (E.D. Pa. 1983); *United States ex rel. Small Business Admin.* v. *Kurtz,* 525 F. Supp. 734, 746-747 (E.D. Pa. 1981), aff'd without opinion, 688 F.2d 827 (3d Cir.), cert. denied, 459 U.S. 991 (1982); *National Acceptance Corp.* v. *Wechsler,* 489 F. Supp. 642, 648 (N.D. Ill. 1980) (Illinois law); *Vickers* v. *Chrysler Credit Corp.,* 158 Ga. App. 434, 438 (1981); *Mutual Fin. Corp.* v. *Politzer,* 21 Ohio St. 2d 177 (1970).

3. *Application of the Waiver Rule to this Case.*

Our resolution of the first two issues in this case necessitates consideration of the bank's contention at oral argument that any rule precluding guarantors from waiving certain article 9 defenses to the disposition of collateral should be applied prospectively to avoid disruptions in established commercial practice. We disagree. There is nothing in the record to show any such established commercial practice. More importantly, although this court has not previously dealt with the issues raised here, we are not announcing common law rules but rather are construing certain statutory provisions. Those provisions have had the same meaning since the effective date of the statutes. See *Commonwealth* v. *Cass,* 392 Mass. 799, 807-808 (1984); *Schrottman* v. *Barnicle,* 386 Mass. 627, 631-632 (1982); *Commonwealth* v. *Horton,* 365 Mass. 164, 171-172 (1974).

4. *Summary Judgment.*

Our conclusions concerning the first three issues in this case require that we determine whether, on the basis of the affidavits submitted by the parties, summary judgment was properly granted. "Pursuant to Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974), only 'if . . . there is no genuine issue as to any material fact [is] . . . the moving party . . . entitled to a judgment as a matter of law.' " *DeVaux* v. *American Home Assurance Co.,* 387 Mass. 814, 817 (1983). "[A]ll doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment." *Attorney Gen.* v. *Bailey,* 386 Mass. 367, 371 (1982), quoting *Gross* v. *Southern Ry.,* 414 F.2d 292, 297 (5th Cir. 1969).

"In considering a motion for summary judgment, the court does not 'pass upon the credibility of witnesses or the weight of the evidence [or] make [its] own decision of facts.' " *Attorney Gen.* v. *Bailey, supra* at 370, quoting *Hub Assocs.* v. *Goode,* 357 Mass. 449, 451 (1970). See *Gordon* v. *American Tankers Corp.,* 286 Mass. 349, 353 (1934). "[T]he moving party must affirmatively show that there is no real issue of fact," *Hub Assocs.* v. *Goode, supra* at 451, all doubts being resolved against the party moving for summary judgment. *Attorney Gen.* v. *Bailey, supra* at 371.

The issue of the reasonableness of a secured party's custody and disposition of collateral is a matter which may properly be decided on a motion for summary judgment. See *Federal Deposit Ins. Corp.* v. *Air Atl., Inc.,* 389 Mass. 950, 956 (1983). In determining whether a secured party's handling of the collateral after default is commercially reasonable, evidence that a better price might have been obtained does not in itself demonstrate that the conduct of the secured party was not commercially reasonable. See G. L. c. 106, § 9-507 (2). See also *Nadler* v. *BayBank Merrimack Valley, N.A.,* 733 F.2d 182, 183-184 (1st Cir. 1984). In this case, therefore, the disparity between the total amount of the obligation and the amount realized from the foreclosure sale is not, by itself, sufficient to establish the guarantors' claim that the sale was not commercially reasonable. On the issue of handling of the collateral, however, the bank has failed to show the absence of any genuine issue of material fact. The affidavits submitted by the bank tend to show that the equipment was moved, stored, and offered for sale in a commercially reasonable manner. In affidavits submitted by the defendants in opposition to the bank's motion for summary judgment, the defendants state facts and circumstances regarding the dismantling and moving of the collateral, losses occurring that resulted from improper or negligent moving, and improper storage of chemicals. Further, the guarantors' affidavits state that the bank refused to permit some potential bidders to examine the equipment in advance of the sale, and withheld a valuable patent. These attestations, if proven, would call into question the reasonableness of the bank's conduct with respect to collateral. Based on these affidavits, a genuine issue of material fact appears to exist. Disposing of this case on the motion for summary judgment was, therefore, not proper.

5. *Conclusion.*

The bank may obtain a deficiency judgment on remand by demonstrating that its disposition of the collateral was commercially reasonable and that the amount realized from the sale failed to satisfy the remaining indebtedness. If the bank is not successful in demonstrating that the disposition of the collateral

was commercially reasonable, the bank may still obtain a deficiency judgment in the amount of the debt owing, reduced by any loss resulting from the bank's failure to adhere to the provisions of § 9-504 (1) and (3). See *Poti Holding Co.* v. *Piggott,* 15 Mass. App. Ct. 275, 278-280 (1983). See also G. L. c. 106, § 9-507 (1).

The judgment of the Superior Court is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*