In re Pierina P. TRAVIS, Debtor.

Pierina P. TRAVIS, Plaintiff,

v.

FIRST NATIONAL BANK OF MARLBORO, Defendant.

Bankruptcy No. A85–0349.
Adv. No. 85–0349.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 25, 1986.

George R. Desmond, Framingham, Mass., for plaintiff.

Douglas Rowe, Morse, Morte and Rowe, Marlborough, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The matter before the Court is the complaint filed on August 21, 1985 by Pierina P. Travis (the "Debtor") against the First National Bank of Marlboro (the "Bank"). Through her complaint, the Debtor seeks a determination of the amount of the Bank's claim against her estate. More specifically, the Debtor seeks a determination that she is not liable to the Bank for any deficiency with respect to an amount due on a promissory note she co-signed because the Bank allegedly foreclosed on its collateral in a commercially unreasonable manner.

## FACTS

On March 26, 1981, Dennis Travis ("Travis"), the Debtor's husband, borrowed $60,000 from the Bank to purchase the assets of the Marlboro Sporting Goods Store (the "store"), a retail store located at 190 Main Street in Marlboro, Massachusetts. The Debtor co-signed the promissory note executed by Travis in conjunction with the loan. As part of the loan transaction, the Bank took a security interest in all the fixtures, equipment, inventory and receivables of the store, and also took a second mortgage on real estate owned by the Debtor and her husband as tenants by the entirety.

Travis paid $70,000 for the store's assets, including its goodwill. During the period from the purchase of the store in March of 1981 until the time the store closed in December of 1983, Travis upgraded the inventory and improved the fixtures and equipment in the store.

When the store closed, the Bank took possession of the collateral. There was conflicting testimony as to the value of the collateral at the time the Bank took possession. Travis testified that the inventory was worth $40,000 and the fixtures and equipment were worth $30,000. In contrast, Richard Fernberg ("Fernberg"), the Bank's commercial loan officer and assistant cashier, testified that the inventory was worth about $9,000 and the fixtures and equipment were worth between $3,000 and $4,000.

The Bank sought bids for the collateral. It received a bid for $8,000 from Louis C. Papile ("Papile") and smaller bids from two other individuals. After negotiations between Papile and the Bank, Papile raised his offer to $9,000. On April 5, 1984, the Bank sold the assets to Papile for $9,000. Significantly, no notice of the sale was given by the Bank to the Debtor.[1]

The Bank applied the $9,000 proceeds from the sale to the balance owed on the promissory note co-signed by the Debtor. At the time of the trial, the balance owed on the note was approximately $58,000.

## CONCLUSIONS OF LAW

Although the Bank is owed approximately $58,000 on its promissory note, the Debtor seeks to avoid any liability in excess of the amount realized on the sale of the collateral because the Bank allegedly did

---

1. The Debtor testified that she did not receive notice of the sale. Fernberg testified that he did not recall giving the Debtor oral notice of the sale, and the Bank's file contained no evidence that written notice was given to the Debtor. Fernberg indicated that it was his "under-

standing" that oral notice was given to the Debtor. Under these circumstances, the Court is persuaded by the Debtor's testimony and finds that no reasonable notification of the sale was given to her.

not sell the collateral of the Marlboro Sporting Goods Store in a commercially reasonable manner. The debtor maintains that the Bank's failure to give her notice of its intended sale of the collateral to Papile was commercially unreasonable behavior and that the sale of the store's assets to Papile for $9,000 after the solicitation of only two other bids was for a commercially unreasonable price. The Court agrees with the Debtor.

Massachusetts' enactment of the relevant section of Article 9 of the Uniform Commercial Code provides:

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor,* if he has not signed after default a statement renouncing or modifying his right to notification of sale. ...

M.G.L. c. 106, § 9–504(3) (emphasis supplied). "Debtor" for purposes of this provision is defined as "the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral...." M.G.L. c. 106, § 9–105(d).

■ The Debtor, as co-maker of the note, was obligated to pay the note even though she was not the owner of the collateral. She thus was entitled to the benefits of section 9–504(3) with respect to notice and a commercially reasonable sale.

Neither the Supreme Judicial Court of Massachusetts nor the Massachusetts Appeals Court has ruled directly on the issue of whether failure of the secured creditor to give the notice required by M.G.L. c. 106, § 9–504(3) prohibits the secured party from recovering the difference between the amount realized on the sale and the amount outstanding on the debt. The Appellate Divisions of the Massachusetts District Courts have issued conflicting opinions. *Compare Abbott Motors, Inc. v. Ralston,* 28 Mass.App. Dec. 35, 5 U.C.C.Rep.Serv. 788 (1964) (Sale of repossessed property without notice to the debtor did not excuse debtor from his obligation under security agreement.) *with One Twenty Credit Union v Darcy,* 40 Mass.App.Dec. 64, 5 U.C.C. Rep.Serv. 792 (1968) (Secured party that possessed and sold the collateral without giving the debtor any notice of the time or place of the sale is not entitled to recover a deficiency judgment against the debtor for the difference between the amount realized at the sale and the amount of the debt.)

In *Poti Holding Company, Inc. v. Piggott,* 15 Mass.App.Ct. 275, 444 N.E.2d 1311, 35 U.C.C.Rep.Serv. 337 (1983), *further appellate review denied,* 388 Mass. 1105, 448 N.E.2d 766 (1983), the Massachusetts Appellate Court recognized that authorities are in dispute with respect to the issue of whether a creditor is entitled to a deficiency judgment following a commercially unreasonable sale. *See generally* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 26.15 (2d ed. 1980); Annotation, "Failure of Secured Party to Make 'Commercially Reasonable' Disposition of Collateral Under UCC § 9–504(3) as Bar to Deficiency Judgment," 10 A.L.R. 4th 413 (1981 & Supp.). In *Poti,* the secured party sued the guarantor of a note for a deficiency judgment following the sale of the debtor's collateral. The court held: 1) that the deficiency judgment should be allowed, even though the sale was not conducted in a commercially reasonable manner since the collateral's fair market value was realized and the defendant sustained no loss from the sale; and 2) that a creditor who does not comply with section 9–504(3) should not be penalized automatically by forfeiture of his right

to a deficiency judgment because the Uniform Commercial Code does not require such an automatic forfeiture. The court noted that section 9–507(1) gives the debtor specific remedies for a creditor's failure to sell collateral in a commercially reasonable manner.[2]

The *Poti* court, however, distinguished the case before it and those cases in which the defect in the sale by the creditor was well defined. The court specifically mentioned the failure to give the debtor notice of an intended sale, as is the case here. The court determined that "a balancing of equities between the parties" was the proper approach to resolving conflicts under section 504(3), observing that such an approach permits the remedy and recovery to be adjusted to a particular situation. 15 Mass.App.Ct. at 278, 444 N.E.2d 1311. In reaching that conclusion, the *Poti* court cited *Universal C.I.T. Credit Co. v. Rone*, 248 Ark. 665, 453 S.W.2d 37, 7 U.C.C.Rep. Serv. 847 (1970).

In *Rone*, the Arkansas Court elaborated upon its earlier decision in *Norton v. National Bank of Commerce*, 240 Ark. 143, 398 S.W.2d 538, 3 U.C.C.Rep.Serv. 119 (1966), a case in which the court balanced the equities between the parties by presuming in the first instance that the collateral was worth at least the amount of the debt, thereby shifting the burden of proving the amount that should reasonably have been obtained from the sale to the creditor. The *Rone* court stated:

> In an action to recover a deficiency judgment in which the sale of collateral is attacked for want of notice, the burden of showing the giving of any notice should properly devolve upon the secured party, not solely because it is the plaintiff in the action, but because the proof with respect thereto is particularly within its knowledge.... Whenever the val-

ue of the collateral is an issue in an action to recover a deficiency, there is a presumption that it was worth at least the amount of the secured debt, and the secured party has the burden of proving the amount that should have been obtained through a sale conducted according to law. It is only where the sale is conducted according to the requirements of the code [the Uniform Commercial Code] that the amount received or bid at a sale of collateral is evidence of its true value in an action to recover a deficiency.

*Rone*, 248 Ark. at 669, 453 S.W.2d at 39–40, 7 U.C.C.Rep.Serv. at 850–51 (citations omitted, footnote omitted).

■ Although the court in *Abbott Motors, Inc. v. Ralston* held that the debtor was entitled only to damages as a setoff against the deficiency in the amount outstanding on the loan as a result of the commercially unreasonable sale, this Court is not bound by that decision. The Court finds that the presumption articulated by the Arkansas Supreme Court is consistent with the balancing of equities position advanced by the Massachusetts Appellate Court. This Court, in balancing the equities of this case, finds that the secured party should bear the burden of establishing that the reasonable value of the collateral was less than the outstanding debt if it wants to recover any deficiency.

■ In the instant case, the Bank failed to give the Debtor notice of the sale and did not obtain an appraisal of the store's inventory and equipment. Rather the Bank relied solely upon Fernberg to compile a list of assets to be sold. Predictably, his testimony as to the value of the store's contents was contradicted by Travis. Under these circumstances and applying the presumption enunciated above, the Court finds that the Bank has failed to overcome

---

**2.** Section 9–507(1) provides in relevant part:

If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part....

M.G.L. c. 106, 9–507(1).

the presumption, applicable where as here there has been a commercially unreasonable sale, that the value of the collateral is equal to the amount outstanding on the loan.

In view of the foregoing, the memoranda and arguments of counsel, the Court hereby enters judgment for the Debtor. It is hereby determined that the Bank is not entitled to recover the difference between the amount due under the promissory note co-signed by the Debtor and the amount received from the sale of the inventory and equipment of the Marlboro Sporting Goods Store.