In re James C. REPLOGLE, Debtor.

FIRST AGRICULTURAL
BANK, Plaintiff,

v.

James C. REPLOGLE, Claudia
Replogle, Defendant.

Bankruptcy No. 88–40156.
Adversary No. 89–4052.

United States Bankruptcy Court,
D. Massachusetts.

Oct. 24, 1989.

Michael E. MacDonald, Cain, Hibbard, Myers & Cook, Pittsfield, Mass., for Plaintiff/First Agricultural Bank.

Joseph H. Reinhardt, Hendel, Collins & Newton, Springfield, Mass., for defendants/James C. & Claudia Replogle.

## OPINION

JAMES F. QUEENAN, Jr.,
Bankruptcy Judge.

First Agricultural Bank (the "Bank") seeks in Count I of its complaint to obtain judgment against James C. Replogle ("Replogle") for a foreclosure deficiency allegedly due under Replogle's guaranties of indebtedness of Hillsdale Packing Company, Inc. ("Hillsdale Packing"), and in Count II to set aside as fraudulent a transfer of real estate made in 1984 by Replogle to his wife. The case began in Massachusetts state court and was then removed here by the Replogles. Thereafter the Bank filed an amended complaint in this Court. The Court then issued a pretrial order bifurcating the trial in order to first hear and determine the issue of liability, including primarily the question of whether the Bank's foreclosure sale was conducted in a commercially reasonable manner. This was done in recognition that a ruling against the Bank on this issue could be dispositive of the entire case. That aspect of the trial is now completed, and I set forth here findings of fact and conclusions of law.

Many of the facts are undisputed. Prescinding from the question of the commercial reasonableness, the Bank is owed $605,880.54 for monies advanced to Hillsdale Packing under two industrial development revenue bonds, a demand note and a time note. The debt is secured by a real estate mortgage on Hillsdale Packing's

plant and vacant land, and by a security agreement covering its equipment, accounts receivable, inventory and other personal property. Replogle guaranteed payment of the Hillsdale Packing debt through execution of separate documents on November 1, 1984 and September 19, 1986. Hillsdale Packing, until its demise, was in the business of slaughtering cattle and, later, hogs at its plant in Hillsdale, New York. Replogle was its president and fifty percent owner of its capital stock; one Gerald Morelli ("Morelli"), who also guaranteed the Bank's debt, owned the other fifty percent stock interest.

On June 11, 1987, Hillsdale Packing terminated operations because of financial difficulties; on the following day it surrendered possession of its real and personal property to the Bank. Shortly thereafter, Replogle and Morelli had separate discussions with the Bank about the possibility of starting up the business again with other investors. Neither presented the Bank with any specific plan, and the discussions terminated without the Bank being asked to make any decision concerning a new venture to be started by either. The Bank soon received a telephone call from a government meat inspector informing it that the federally-authorized meat stamp would have to be surrendered. Ms. Kelley, the Bank officer handling the foreclosure, obtained a 120 day extension of this stamp until the following October, when the stamp was surrendered. Other permits necessary for the slaughtering operations expired about the same time. The Bank made no effort to ascertain the need for retention of these other permits; nor did it try to obtain an extension of their effectiveness. The Bank also made no effort to sell the business assets as an entity, either through private or public sale. It contacted no operators of slaughterhouses, and it did not seek to employ a business broker. It placed no advertising seeking a sale of the entire business assets. It did not take an inventory of the equipment until February of 1988 when its auctioneer did so in

anticipation of a public auction. By that time some items were missing—an automatic meat slicer and a tractor with a manure spreader. The Bank's efforts were confined to arranging the separate and uncoordinated auctions of real and personal property described below.

The Bank instituted proceedings in the New York Supreme Court for foreclosure of the plant and other real estate of Hillsdale Packing, joining Hillsdale Packing, Replogle and Morelli (and others) as defendants. Although we are informed that Replogle and Hillsdale Packing unsuccessfully opposed the action, the parties have furnished us with no details concerning these defenses or any court rulings thereon, other than an intimation in questions by the Bank's counsel that the New York court acted on some party's motion for summary judgment. On September 30, 1988, a referee appointed by the New York Supreme Court conducted an auction of the real estate at the courthouse for the County of Columbia, New York. The Bank was the highest bidder, purchasing the company's three parcels for a total price of $257,000. Upon the referee's motion for confirmation of his report of the sales, the New York Supreme Court confirmed the sales and entered a $653,275.28 judgment against Hillsdale Packing. It declined to enter judgment against Replogle or Morelli, without prejudice to a renewal of the request for judgment against them. It knew that Replogle was then a debtor in the bankruptcy case pending here, and presumably it declined to enter judgment against him because the automatic stay was then in effect against such action, pursuant to 11 U.S.C. § 362.

On November 1, 1988, a month after the real estate auction, a professional auctioneer hired by the Bank conducted an auction of the equipment of Hillsdale Packing at the company's plant. Items of equipment were sold to various bidders for a total price of $32,830.50.[1]

---

1. The auctioner had previously furnished the Bank with a written "liquidation" appraisal of the equipment. Upon objection by counsel to Replogle, this appraisal was excluded as inadmissible hearsay.

## I. COMMERCIAL REASONABLENESS OF BANK'S DISPOSITION OF PERSONAL PROPERTY

■ When a secured party forecloses upon and subsequently disposes of personal property, "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." Mass.Ann.Laws ch. 106, § 9–504 (Law. Co-op. 1984 & Supp.1989).[2] A guarantor of the debt is a "debtor" who may challenge the commercial reasonableness of a sale. *Shawmut Worcester County Bank v. Miller*, 398 Mass. 273, 278, 496 N.E.2d 625, 628 (Mass.1986). Counsel for Replogle argues that in disposing of all the operating assets of this business the Bank's obligation to act in a commercially reasonable manner required it to make some reasonable effort to sell the business as a package to someone interested in starting up a slaughterhouse. Only in this fashion, says counsel, could the Bank get a price in excess of liquidation value. He asserts that all of the assets could have been sold as a package because either a public or private sale of the personal property could have been coordinated with the real estate auction at the courthouse where, by statute, it had to be held. He also points to the Bank's failure to take an inventory for seven months and the unexplained disappearance of some items of equipment. I conclude that these omissions of the Bank are some indication of its failure to act in a commercially reasonable manner. *See Miller*, 496 N.E.2d at 630 (summary judgment for secured party denied because of allegations that it had improperly handled equipment prior to sale). I will deal with their weight in conjunction with my conclusions regarding the Bank's over-all burden of proof.

The Bank's only witness was its workout officer, Ms. Kelly. She was unfamiliar with the advertising and promotional efforts made on the equipment auction. The Bank offered no admissable evidence on the value of the equipment or of any other personal property constituting its collateral. Thus, essential evidence on the issue of commercial reasonableness was missing. The Bank appeared to rely upon the order of the New York Supreme Court affirming the referee's report of his sale. But that order is relevant only to the real estate sold by the referee. It has no bearing upon the commercial reasonableness of the auction sale of equipment or the disposition of any other personal property included in the Bank's security agreement.

■ The Bank has the burden of proof concerning the commercial reasonableness of its disposition of collateral. *Shawmut Worcester County Bank v. Miller*, 398 Mass. 273, 282, 496 N.E.2d 625, 630–31 (Mass.1986); *Poti Holding Company v. Piggott*, 15 Mass.App.Ct. 275, 444 N.E.2d 1311 (Mass.App.Ct.1983) (court failed to disagree with master's ruling on burden); *K.B. Oil Co. v. Ford Motor Credit Co., Inc.*, 811 F.2d 310, 314 (6th Cir.1987); *United States v. Willis*, 593 F.2d 247, 258 (6th Cir.1979); *Federal Deposit Ins. Corp. v. Rodenberg*, 571 F.Supp. 455, 461 (D.Md. 1983); *United States v. Champion Sprayer Co.*, 500 F.Supp. 708, 709 (E.D.Mich. 1980); *Dynalectron Corp. v. Jack Richards Aircraft Co.*, 337 F.Supp. 659, 662–63 (W.D.Okla.1972). Clearly, it has not sustained that burden in light of its failure to furnish any evidence of the advertising and promotion of the auction sale, or of the equipment's value, and in light also of its various omissions previously discussed. I therefore find that the Bank's disposition of the collateral was not commercially reasonable.

## II. EFFECT UPON BANK'S DEFICIENCY CLAIM

There remains the issue of what effect this disposition lacking commercial reasonableness has upon the Bank's claim for the balance of its indebtedness. In *In re Nardone*, 70 B.R. 1010 (Bankr.D.Mass.1987), this Court discussed that general legal issue at some length. In *Nardone*, however,

---

**2.** Although the equipment was in Hillsdale Packing's plant in Hillsdale, New York, the Bank is located in Massachusetts and its form of security agreement signed by the parties specifies that Massachusetts law applies.

it was unnecessary for the Court to divine which among the various legal theories is the law of Massachusetts. In *Nardone*, the debtor was entitled to prevail under any of the theories which have developed. I now return to that topic, at the risk of substantial repetition of what was said in *Nardone*.

The Uniform Commercial Code ("U.C. C."), enacted in Massachusetts and elsewhere, holds a debtor liable for a foreclosure deficiency. Mass.Ann.Laws ch. 106, § 9–504(2) (Law. Co-op.1984 & Supp. 1989). It also gives the debtor the right to recover from the secured party any loss caused by a commercially unreasonable disposition of collateral. Mass.Ann.Laws ch. 106, § 9–507(1) (Law. Co-op.1984 & Supp. 1989). The U.C.C., however, contains no provision dealing with the effect of a commercially unreasonable disposition upon the secured party's right to recover a deficiency. This was an oversight, according to Professor Gilmore, one of the U.C.C. draftsmen. He suggests that the solution may be found in case law under the Uniform Conditional Sales Act whose similar provisions were construed by the courts as denying a right to a deficiency in these circumstances. 2 G. Gilmore, *Security Interests in Personal Property*, § 44.9.4 at 1264 (1965).

Not all decisions under the U.C.C. have followed their forebears under the Uniform Conditional Sale Act. Three theories have developed: one absolutely precludes recovery of the deficiency, a second creates a rebuttable presumption that the value of the collateral equaled the debt, and the third requires the obligor to establish his damages and then set them off against the debt. *Uniform Commercial Code* § 26–15 (2d ed. 1980); 1A P. Coogan, W. Hogan & D. Vaghts, *Secured Transactions Under the Uniform Commercial Code* § 8.06[2]; 9 R. Anderson, *Uniform Commercial Code* § 9–504:90 to § 9–5–4:93 (3d ed. 1985); Annotation, *Failure of Secured Party to Make "Commercial Reasonable" Disposition of Collateral Under UCC § 9–504(3) as Bar to Deficiency Judgment*, 10 A.L.R. 4th 413 (1981).

## A. *Absolute Preclusion Theory*

Courts adopting the so-called "absolute preclusion" theory regard the secured party's compliance with his obligation to conduct a commercially reasonable disposition as a condition precedent to his ability to recover any deficiency. They deal with the question in either one of two factual contexts. In some cases the secured party has failed to notify the debtor of the sale; in others he has given notification but has failed to conduct a commercially reasonable sale. Where no notice has been given, the courts reason that the secured party should be denied any recovery because the debtor has been denied the ability either to redeem the collateral or to attack its commercial reasonableness based upon his own observations made at the sale. *See, e.g., Wells Fargo Bank v. Carter (In re Carter)*, 511 F.2d 1203, 1204 (9th Cir.1975) (applying California law); *Camden National Bank v. St. Clair*, 309 A.2d 329, 13 U.C.C.Rep. Serv. 199 (Me.1973); *First National Bank of Bellevue v. Rose*, 197 Neb. 392, 249 N.W.2d 723, 20 U.C.C.Rep. 1413 (Neb. 1977). It has been observed that this same reasoning is not present where notice has been given but the sale lacks commercial reasonableness. *See, Ford Motor Credit Co. v. Jackson*, 126 Ill.App.3d 124, 81 Ill. Dec. 528, 466 N.E.2d 1330, 39 U.C.C.Rep. Serv. 743 (Ill.App.Ct.1984).

## B. *Rebuttable Presumption Theory*

Perhaps a greater number of courts take a less rigid position, but one which nevertheless places a substantial burden upon the secured party. This view, sometimes called the "rebuttable presumption" theory, holds that the secured party's failure to live up to his foreclosure obligations creates a rebuttable presumption that the value of the collateral equaled the debt. In order for the presumption to be dispelled, these courts require the secured party to sustain the burden of proving that the collateral was worth less than the debt. They reject the absolute preclusion theory as a windfall to the debtor and a penalty to the secured party. They adopt the presumption and impose this burden of proof upon

the secured party, however, out of the belief that the debtor is often in a difficult position to prove his damages because the secured party is typically the only one who knows what was done in preparation for sales and the only one who has available for testimony witnesses who appraised the collateral. *See, e.g., United States v. Willis,* 593 F.2d 247 (6th Cir.1979) (applying federal rule of decision); *In re Andersen,* 50 B.R. 137, 41 U.C.C.Rep.Serv. 1139 (Bankr.W.D.Mich.1985) (addressing a lack of notice to the debtor of the sale and choosing to follow the *Willis* standard rather than an intermediate Michigan appellate court); *Midlantic National Bank v. Coyne,* 222 N.J.Super. 649, 537 A.2d 798 (N.J.Super.Ct.Law Div.1987); *Weiner v. American Petrofina Marketing, Inc.,* 482 So.2d 1362, 42 U.C.C.Rep.Serv. 810 (Fla. 1986); *First Galesburg National Bank & Trust Co. v. Joannides,* 103 Ill.2d 294, 82 Ill.Dec. 646, 469 N.E.2d 180, 39 U.C.C.Rep. Serv. 18 (Ill.1984); *Savoy v. Beneficial Consumer Discount Co.,* 503 Pa. 74, 468 A.2d 465, 37 U.C.C.Rep.Serv. 1422 (Pa. 1983); *State Bank of Towner v. Hansen,* 302 N.W.2d 760, 30 U.C.C.Rep.Serv. 1493 (N.D.1981); *Security Trust Co. of Rochester v. Thomas,* 399 N.Y.S.2d 511, 59 A.D.2d 242 (N.Y.App.Div.1977); *Universal C.I.T. Credit Co. v. Rone,* 248 Ark. 665, 453 S.W.2d 37, 7 U.C.C.Rep.Serv. 847 (Ark. 1970).

## C. *Damage Setoff Theory*

The "damage setoff" theory has been adopted by the smallest number of courts. These courts view the secured party's claim to a deficiency and the debtor's claim for damages as independent rights which must be separately established, with the debtor having the burden of proving his damages; once that is done, they permit the debtor to set off his damages against the deficiency claim. They, too, point to the windfall that a debtor can realize from the absolute preclusion approach. They read the provisions of U.C.C. § 9–504 and § 9–507 as creating only separate deficiency and damage claims. They contrast these statutes with U.C.C. § 2–706, which provides that a seller who resells after the buyer's breach may recover his damages from the buyer only if he resells in a commercially reasonable manner. Some of these decisions also rely upon the policy declaration in U.C.C. § 1–106 against penal damages. *See, e.g., Barbour v. United States,* 562 F.2d 19 (10th Cir.1977) (applying federal rule of decision); *Valley Mining Corp., Inc. v. Metro Bank,* 383 So.2d 158, 28 U.C.C.Rep. Serv. 1231 (Ala.1980); *Beneficial Finance Co. v. Young,* 612 P.2d 1357, 29 U.C.C.Rep. Serv. 359 (Okla.1980); *Zions First National Bank v. Hurst,* 570 P.2d 1031, 22 U.C.C. Rep.Serv. 1071 (Utah 1977).

## D. *Massachusetts Law*

Massachusetts law is unsettled on the relationship between the secured party's obligation of commercial reasonableness and his right to a deficiency. There is disagreement among decisions of the appellate division of the District Court Department on the question of whether lack of notice bars the deficiency claim. *Compare Abbott Motors, Inc. v. Ralston,* 28 Mass. App.Dec. 35, 5 U.C.C.Rep.Serv. 788 (1964) *with One Twenty Credit Union v. Darcy,* 40 Mass.App.Dec. 64, 5 U.C.C.Rep.Serv. 792 (1968). The Massachusetts Appeals Court, a higher intermediate appellate court, has dealt with the more general issue of commercial unreasonableness, but under unusual circumstances. In *Poti Holding Company, Inc. v. Piggott,* 15 Mass.App.Ct. 275, 444 N.E.2d 1311, 35 U.C.C.Rep.Serv. 337 (Mass.App.Ct.1983), the debtor had admitted in discovery that the foreclosure sale brought the collateral's fair market value. Yet a master had found that the sale was not made in a commercially reasonable manner. The master based this finding on his subsidiary finding that the secured party had not sustained its burden of proof in failing to submit evidence on such matters as the auctioneer's experience and the areas of circulation of the newspapers in which advertisements had been placed. The court reviewed the division in the case law, and concluded that the most appropriate analysis was one which balanced the equities between the parties so as to adjust the remedy to the

particular circumstances before it. It declined to adopt any one of the three theories in all circumstances. It did, however, regard a fixed rule barring a deficiency claim because of the secured party's failure to live up to his obligations as being inconsistent with both Mass.Ann.Laws ch. 106, § 9–507 (Law. Co-op.1984 & Supp.1989), which provides only for a damage claim by the debtor, and Mass.Ann.Laws ch. 106, § 1–106 (Law. Co-op.1984 & Supp.1989), which contains a general policy declaration against penal damages. *Id.* 444 N.E.2d at 1314. Based on the equities, the court affirmed the deficiency judgment which had been entered below.

More recently, the Supreme Judicial Court of Massachusetts, the Commonwealth's highest court, decided *Shawmut Worcester County Bank v. Miller*, 398 Mass. 273, 496 N.E.2d 625, 2 U.C.C.Rep. Serv.2d 383 (Mass.1986). The trial judge had granted the bank's motion for summary judgment on its deficiency claim based upon affidavits setting forth an allegedly reasonable sales effort and a sales price which was 92% of the value arrived at by the bank's appraiser. Opposing affidavits of the defendant guarantors asserted a number of allegedly unreasonable actions on the part of the bank, including removal of equipment collateral to a warehouse from a modern plant where its operation could have been demonstrated in connection with the sale. The court ruled that summary judgment was improperly granted because of the existence of material issues of fact on the question of commercial reasonableness, and it remanded the case for trial. The court observed that if the bank was unsuccessful in demonstrating that it had disposed of the collateral in a commercially reasonable manner, the bank would still be entitled to obtain a deficiency judgment in the amount of its debt less any loss resulting from its default, citing *Poti* and U.C.C. § 9–507(1), the statutory provision granting a debtor the right to damages.

I conclude from these Massachusetts decisions that the absolute preclusion theory is not the law of the Commonwealth. But still unsettled is the question of which of the other two theories the Massachusetts courts would adopt—the rebuttable presumption theory or the damage setoff theory. *Poti Holding* expressly refused to adopt one over the other. It did not have to do so in view of the debtor's judicial admission that the sale had brought fair market value. The Supreme Judicial Court also did not have to make the choice in *Miller* because, being a summary judgment case, the issue was not presented. Its observation concerning the bank's right to a deficiency cannot be viewed as even an *obiter dictum* adoption of the damage setoff theory. In light of the bank's affidavit concerning fair market value, that observation was presumably based upon the assumption that the value of the collateral had been established by evidence. It should also be borne in mind that *Miller* referred approvingly to *Poti*, which had expressly refrained from adopting the absolute preclusion theory.

■ I further conclude that the Massachusetts courts would adopt the rebuttable presumption theory over the damage setoff theory if the question were squarely presented to them. I am therefore in agreement with Judge Gabriel of this District who regards the rebuttable presumption theory as expressive of the law of Massachusetts because of its consistency with the balancing of the equities approach utilized in *Poti*. *See In re Travis*, 67 B.R. 406, 409 (Bankr.D.Mass.1986). The rebuttable presumption theory is a flexible middle position between the other two theories. It appears to have found favor with the largest number of courts partly because of this middle ground and partly because it takes into account the practical consideration that the secured party is often the only one in the position to introduce evidence concerning the collateral's value.

That was the situation here. Only the Bank had this evidence. The evidence could easily have been introduced; counsel for Replogle had previously agreed to allow the Bank to obtain an extension of this portion of the bifurcated trial in order to do so through witnesses not present. And yet, the Bank chose to rest its case after

Replogle had rested. It was only after counsel to Replogle urged in closing argument adoption of the rebuttable presumption theory that Bank counsel requested, over objection, the opportunity to present further evidence. That request is denied because of the prejudice that would then result to Replogle. One party should not be given the opportunity of, in effect, having a second trial after being educated by his opponent concerning the legal theory upon which the opponent relies.

Replogle's indebtedness to the Bank has therefore been satisfied. Because only a creditor or a creditor's representative may complain of an allegedly fraudulent conveyance, it follows that the Bank's fraudulent conveyance cause of action also fails.

A separate judgment has issued dismissing the complaint.