In re James C. REPLOGLE, Debtor.

FIRST AGRICULTURAL BANK,
Plaintiff, Appellant,

v.

James C. REPLOGLE and Claudia Replogle, Defendants, Appellees.

No. 90–1821.

United States Court of Appeals,
First Circuit.

Heard Feb. 8, 1991.

Decided April 4, 1991.

Michael E. MacDonald with whom Cain, Hibbard, Myers & Cook, Pittsfield, Mass., was on brief, for plaintiff, appellant.

Joseph H. Reinhardt with whom Hendel, Collins & Newton, P.C., Springfield, Mass., was on brief, for defendants, appellees.

Before TORRUELLA, Circuit Judge, ALDRICH and BOWNES, Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

On June 12, 1987 the co-owners of Hillsdale Packing Co., Inc., appellee James C. Replogle and one Gerald Morelli, turned over the company to appellant First Agricultural Bank of Pittsfield, Massachusetts, mortgagee. The mortgage was on all of Hillsdale's assets, and secured its indebtedness to the Bank of some $1,337,000, an indebtedness that Replogle had personally guaranteed. The assets consisted of three pieces of real estate in the State of New York, two vacant and one on which were a slaughterhouse and a small retail outlet, and personal property, plant equipment, that went with the slaughterhouse. The business had been unsuccessful for the past year, and the owners had been unable to interest new participants. The Bank commenced foreclosure proceedings in the New York Supreme Court. A court-appointed referee conducted an auction of the real property on September 30, 1988, at a total net price of $257,000, the Bank being the highest bidder. The sale was confirmed by the court. On November 1, 1988 the personal property was sold at public auction, generating $32,830. This left Replogle's personal indebtedness at $605,880.

Meanwhile, in September, 1987 the Bank sued Replogle on his indebtedness in the Massachusetts Superior Court, joining his wife, as an alleged transferee of their Massachusetts home in fraud of creditors. In March, 1988 Replogle filed Chapter 13 proceedings in the District of Massachusetts Bankruptcy Court, and a year later the Superior Court proceeding was removed thereto on Replogle's motion. The bankruptcy judge separated the fraud count, and tried first the matter of the indebtedness. After trial he disallowed the claim, *in toto*, on the ground that, because the sale of the personal property was commercially unreasonable, the debt was presumably satisfied. His findings were held to be not clearly erroneous, and his order confirmed by the district court. The Bank appeals.

We have some initial difficulties with the bankruptcy judge's opinion. 107 B.R. 1. At the outset he commented, presumably unfavorably, on the Bank's allowing the company's meat stamp, and other licenses, to expire, from which it appeared that he was going to find the real estate, notably the slaughterhouse, sale commercially unreasonable. However, he did not pursue the matter. From his silence, although he did not so state, we take his opinion as reading the New York court's confirmance of the sale, N.Y. Real Property Actions Law §§ 1610, 1614, as a finding of commercial reasonableness, and, more important, as agreeing therewith.[1]

This interpretation of his opinion's silence is confirmed by its casting. Heading I, immediately following an unheaded section that concerned the real estate, dealt solely with the commercial unreasonableness of the November sale of the personalty. In affirmatively finding it unreasonable the judge gave a number of reasons. They began with the recital that the Bank made no attempt to sell the business assets as an entity to someone who might be thinking of starting a slaughterhouse, and failed to make an inventory until February, 1988. "By that time some items were missing—an automatic meat slicer and a tractor with a manure spreader." Also the Bank did not coordinate the sales. "I conclude that these omissions of the Bank are some indication of its failure to act in a commercially reasonable manner."

The opinion in no way dealt with the Bank's reason for separating the sales. In addition, the Bank officer testified that they had always hoped to sell the personalty as an entity, and that 20 or more persons had attended the auction, and none expressed any such interest. With Hillsdale's failure in the business, one might wonder where the judge's imagined purchaser who would want to buy secondhand equipment in a package to start a new slaughterhouse was going to come from.

1. Although Replogle was a party to the foreclosure action, and the bankruptcy judge had notice, the automatic stay issued in the Chapter 13 proceedings, 11 U.S.C. § 362, meant that the New York decision was not *res judicata* as to Replogle.

As to the delay in making an inventory, the Bank officer testified that the property had been kept under lock and key, and that no items were missing. The judge's finding that the meat slicer, tractor and manure spreader, were lost was contrary to the testimony of Replogle himself, who confirmed that they were never turned over to the Bank. The judge's dwelling on the date of the inventory, and never mentioning Replogle's testimony, is not understandable.

> His ultimate conclusion was as follows: Clearly, it has not sustained that burden [of proving commercial reasonableness] in light of its failure to furnish any evidence of the advertising and promotion of the auction sale, or of the equipment's value, and in light also of its various omissions previously discussed. I therefore find that the Bank's disposition of the collateral was not commercially reasonable.

We are somewhat unhappy where this leaves us. The judge was surely correct in the first portion of the above: the Bank had a burden as to the personalty, and did little to support it. Does his conclusion fall when he depended also on questionable, and, in part, unsupportable, facts?

On appeal, the district court found that the bankruptcy judge's findings were not clearly erroneous, and affirmed.

> The Court notes from the record that approximately seven months passed from the initial time of possession until the Bank took an inventory of debtor's assets; that the Bank did not attempt to sell debtor's business as a going concern; and that the Bank had allowed the piecemeal sale of property of the debtor, including a meat slicer, a truck, and a manure spreader, some time before the announced public auction.

No one has suggested why delay in making a personalty inventory was detrimental, unless property was lost, and the district court did not find loss, but early sale, *post.* Its statement that the bankruptcy judge found that the Bank did not attempt to sell the debtor's business as a going concern was error; the judge found only that it did not attempt to sell the personalty as an entity. The court's statement that the bankruptcy judge found the Bank sold the meat slicer, a truck, and a manure spreader, prior to the announced auction, is also erroneous. It is true that the Bank allowed Morelli to sell a truck, but the evidence was that it was at fair value, and the bankrupt received credit for it. The truck had not figured in the bankruptcy judge's findings. In sum, the district court's reasons for affirming the bankruptcy judge's findings are factually unsupportable.

■■■ Having said all this, we do recognize that the Bank was the party with the burden of proving commercial reasonableness. *Shawmut Worcester County Bank, N.A. v. Miller,* 398 Mass. 273, 496 N.E.2d 625 (1986). This burden is not sustained by pointing out errors by the bankruptcy judge and the district court. We will not quarrel with the conclusion that the Bank failed in its proof with respect to the personalty. Those reasons given by the bankruptcy judge that were correct were, in themselves, a sufficient obstacle, and we will leave it at that. We therefore turn to the bankruptcy judge's resolution of the consequences.

■■ There are three possible views when a foreclosure sale is not shown to be commercially reasonable: absolute preclusion; rebuttable presumption, with the burden on the mortgagee to show that the fair value of the collateral was less than the debt, and the so-called damage set-off, with the burden on the debtor to show his injury. Massachusetts has rejected absolute preclusion, *Poti Holding Co. v. Piggott,* 15 Mass.App. 275, 278–80, 444 N.E.2d 1311, 1313–14 (1983), and has not finally chosen as between the others. The bankruptcy judge, so recognizing, disposed summarily of the Bank's claim that certain Massachusetts dicta favored the set-off theory. He then reasoned that rebuttable presumption was the fairer rule. The district court, stating flatly that Massachusetts would adopt the rebuttable presumption rule, affirmed.

The rebuttable presumption rule is undoubtedly easier for bankruptcy judges,

and perhaps is fairer, where the creditor failed in correctly conducting the sale. At the same time, the given reason that the creditor knows more about the property and is in a better position to show its value than the debtor-owner seems less than self-evident. And as to its being fairer in operation, the result here is that the Bank, that admittedly had engaged a first-class auctioneer, but finding his opinion of the value of the personalty excluded (because not properly offered), is faced with a ruling that it has not rebutted the presumption, *viz.*, that personalty which sold at auction for $32,830 net was presumptively worth the remaining $605,880 debt.

The Bank's motion to reopen was curtly denied.

It was only after counsel to Replogle urged in closing argument adoption of the rebuttable presumption theory that Bank counsel requested, over objection, the opportunity to present further evidence. That request is denied because of the prejudice that would then result to Replogle. One party should not be given the opportunity of, in effect, having a second trial after being educated by his opponent concerning the legal theory upon which the opponent relies.

Prejudicial means unfairly prejudicial. What unfairness there would be to the debtor, except that he probably would lose a $600,000 windfall, does not appear. Bank counsel was perhaps not very perspicacious, but he did not deserve that.

If the Massachusetts courts were altogether silent as to the two theories, it would not be unreasonable for the bankruptcy judge, or the district court, to choose what he, or it, thought the better rule, and to make the assumption that the Massachusetts court would think so, too. There is, however, an obstacle here. The assumption is unwarranted if the state court has made an affirmative indication, if only as dictum, to the contrary. *United Services Ass'n v. Barger*, 910 F.2d 321, 325 (6th Cir.1990); *In re Air Crash Disaster Near Chicago*, 701 F.2d 1189, 1196 (7th Cir.1983). In *Shawmut Worcester County*

*Bank, N.A.*, 398 Mass. at 282–83, 496 N.E.2d 625, the court said,

The bank may obtain a deficiency judgment on remand by demonstrating that its disposition of the collateral was commercially reasonable and that the amount realized from the sale failed to satisfy the remaining indebtedness. If the bank is not successful in demonstrating that the disposition of the collateral was commercially reasonable, the bank may still obtain a deficiency judgment in the amount of the debt owing, reduced by any loss resulting from the bank's failure to adhere to the provisions of § 9–504(1) and (3).

We read this as pointing to the damage set-off theory of damages. It may be that when the Massachusetts court comes to face the question squarely, it will speak differently, but in the meantime it is not for us to decide in terms of what may appeal to us as preferable. The judgment below must be reversed.

We are not blind to the fact that, for want of proof of damages, as we read the record, it is now the debtor who is left swinging in the wind. We would not preclude a bankruptcy judge from reopening the case on the personal property's value.

*Reversed and remanded for further proceedings not inconsistent herewith.*